W. H. WHITE v. J. J. KINCAID, KINCAID LUMBER & VENEER COMPANY et al.

(Filed 16 December, 1908).

**1. Corporations—Damnum Absque Injuria.**

When a person, corporate or individual, is doing a lawful thing in a lawful way, his conduct is not actionable, though it may result in damage to another, for no legal right has been invaded, and hence it is *damnum absque injuria.*

**2. Corporations—Dissolution—Statute—Directors—Rights of Stockholders—Injunction.**

Revisal, sec. 1195, enters into every charter of a corporation subject to its provisions, and every stockholder in such corporation takes and holds his stock subject to the power of dissolution therein provided; and when the statutory provisions are complied with and the directors, acting in good faith and according to their best judgment for the interests involved, pass the resolution required, and it is concurred in by two-thirds in interest of the stockholders, it is only in rare and exceptional instances that their action should be stayed or interfered with by the courts.

**3. Corporations — Dissolution—Statute—Directors—Fiduciary Relationship.**

The directors of a corporation in proceedings for dissolution, under Revisal, sec. 1195, are trustees in the sense that they must

act faithfully in their judgment for the benefit of the corporation and in furtherance of its interest, and not for the purpose of unjustly oppressing the holders of the minority stock, or to attain their own personal ends.

4. Corporations — Dissolution — Statute — Injunction — Directors— Discretion.

When a corporation lawfully proceeds to wind up its affairs in accordance with Revisal, sec. 1195, the motive prompting the act, however reprehensible or malicious, is not, as a rule, relevant to the inquiry; and the courts will not undertake to interfere with the honest exercise of discretionary powers vested by statute in the management of a corporation, however unwise or improvident it may seem in a given instance.

5. Corporations — Dissolution — Statute—Rights of Stockholders — Injunction—Fraud.

When it appears of record that a restraining order has been issued against the dissolution of a corporation according to the provision of Revisal, sec. 1195, at the suit of a stockholder, and that there was no scheme or conspiracy on the part of the management or majority stockholders of the corporation to oppress the plaintiff, except an inference made by him from the fact that a dissolution was resolved upon; and that, though solvent, there was no available capital with which to resume business, and no prospect of mutual co-operation or eventual success, the restraining order should be dissolved.

6. Corporations—Dissolution—Statutes—Questions for Court—Procedure.

Upon the dissolution at the final hearing of an order restraining a manufacturing corporation from dissolving according to the provisions of Revisal, sec. 1195, in an action brought by a stockholder, when it appears that there are substantial issues involving the adjustment of corporate affairs arising from the pleadings, especially as to indebtednesses between the corporation and plaintiff and defendant, which will require decision by the Court, the proceedings referred to and contemplated by Revisal, sec. 1203, should be carried on and completed in the present action, and include such orders as to the disposition and sale of the plant as may be for the best interests of the assets and of the parties.

CAUSE heard on return to preliminary restraining order, before *Webb, J.,* holding courts Tenth District, on 1 October, 1908.

The plaintiff, using his complaint filed in the cause as an affidavit, alleged, among other things, that he owned two thousand dollars of stock in defendant company, a corporation, having nineteen thousand dollars of paid up stock, owning a valuable plant and owing not more than twenty-eight hundred dollars. Plaintiff also alleged certain wrongs committed in the control and management of the plant on the part of one of the defendants, J. J. Kincaid, the manager and owner of one hundred and forty shares of stock; and avers, further, that he and the individual co-defendants had made a combination and entered on a scheme to dissolve the corporation for the purpose of ousting plaintiff from his office as Secretary and Treasurer, and impairng the value of his holdings, by selling out the property at a time and in a manner that would result in a sacrifice of the same, and cause great damage to the corporation and the holders of stock therein, etc. Plaintiff alleged, further, that the corporation is solvent, and was prosperous until the last several months, when, owing to the panic, the furniture mills of the county had closed down or were working on shorter time, and this condition of affairs had made it advisable for defendant company to suspend operation temporarily, but there was every reason to believe that, with the revival of business, now probable and imminent, defendant company could resume and, under proper management, become a money-making enterprise.

The individual defendants answered and admitted that the plant was now closed down, and alleged that its indebtedness is much greater than plaintiff states, filing an itemized statement of accounts and claims against it; that, while the corporation is now solvent, there are no present means available for further operations. Defendants further admit that, under sec. 1195, Revisal, the defendants, directors, acting in their best judgment, and believing it advisable and most for the benefit of the corporation that the same be dissolved,

had passed resolutions to that effect; and, having issued proper notices for the stockholders to meet and consider and pass upon this resolution, as required by the statute, the said stockholders were proceeding to act under the notice when they were stayed by restraining process of the court issued in this cause. Defendants deny that there has been any scheme or purpose to wrong the plaintiff or deprive him of his property, or to wrong or injure the corporation, or the holders of the stock therein, either by reason of the dissolution or the disposition of the property, but aver that the property is to be sold by methods calculated to make it bring its value, and where plaintiff, and all others, shall have an opportunity to bid and buy; that defendant J. J. Kincaid is the only member of the company who has any experience in this work, and he desires to withdraw and go into the business in the eastern part of the State, and, taking all the conditions and circumstances into consideration, the directors, deeming it to the best interest of the corporation and its stockholders that it should be dissolved, have passed the resolution to that effect, as heretofore stated.

Plaintiff replied, denying the amount of the indebtedness claimed, averring mismanagement, etc., on the part of defendant J. J. Kincaid, as stated. On the hearing the preliminary restraining order was dissolved, and the plaintiff excepted and appealed.

*T. C. Linn, Adams, Jerome & Armfield* for plaintiff.
*L. H. Clement, Hayden Clement, Overman & Gregory* for defendant.

HOKE, J., after stating the case: Our statute on the subject, Revisal 1905, sec. 1195, provides for the voluntary dissolution of corporations, in effect, as follows: "That whenever, in the judgment of the board of directors, it shall be deemed advisable and most for the benefit of a corporation

that it should be dissolved, they may pass a resolution to that effect by a majority of the board, proper notice being first given as required, and when this resolution has been submitted in writing to the stockholders, and, in a meeting called for the purpose, two-thirds in interest of the stockholders consent to such dissolution, and the action is filed with the Secretary of State, who shall issue a certificate to that effect, and after due publication of notice in the county, and this having been made to appear to the Secretary, the corporation shall be dissolved and its business affairs settled up and adjusted as required by law."

As far as North Carolina is concerned, this statute settles the question formerly much mooted in the courts as to whether, and under what circumstances, a corporation could be dissolved by the stockholders, when no time was fixed for its duration, upholding and extending this power of voluntary dissolution as established by the better considered decisions on the subject. *Black v. Canal Co.*, 22 N. J. Eq., 130-404; *Treadwell v. Salisbury Mfg. Co.*, 7 Gray, 393. This regulation enters into every charter, subject to the provisions of the statute, and unless otherwise enacted by the Legislature, every stockholder takes and holds his stock subject to this power of voluntary dissolution, by resolution of the directors concurred in by two-thirds in interest of the stockholders. This being the law governing the interest of these parties, when the board of directors of a corporation have determined, in the exercise of their best judgment, that the corporation be dissolved, and are pursuing the methods specified by the statute, it is only in rare and exceptional instances that their action should be stayed or interfered with by the courts. It is a principle well established, that when a person, corporation or individual is doing a lawful thing in a lawful way, his conduct is not actionable, though it may result in damage to another; for, though the damage done is undoubted, no legal right of another is invaded, and hence it is said to be *damnum absque*

*injuria. Dewey v. R. R.,* 142 N. C., 392; *Thomason v. R. R.* (plaintiff's appeal), 142 N. C., 318; *Oglesby v. Attrill,* 105 U. S., 605. In such cases the motive prompting the act, however reprehensible or malicious, is not, as a rule, relevant to the inquiry; nor will courts undertake to interfere with the honest exercise of discretionary powers vested by statute in the management of a corporation, however unwise or improvident it may seem. *Windmuller v. Distilling Co.,* 114 Fed., 491.

It is true that, both before and since the enactment of this statute, there is a salutary principle very generally recognized and upheld by well considered decisions, that the directors of these corporate bodies are to be considered and dealt with as trustees, in respect to their corporate management; and that this same principle has been applied to a majority or other controlling number of stockholders, in reference to the rights of the minority or any one of them, when they are as a body in the exercise of this control, in the management and direction of the corporate affairs, *Farmers Loan and Trust Co. v. R. R.,* 150 N. Y., 410; and certainly this is true when the majority or controlling number of stockholders are exercising their authority in dictating the action of the directors, thereby "causing a breach of fiduciary duty." *Robotham v. Insurance Co.,* 64 N. J., Eq., 672-689. And while these decisions have been more frequently made in reference to some assignment or disposition of the corporate property or assets, whereby the corporation is disabled from performing its work, and is necessarily retired from active business, this same principle applies, in a restricted degree, when the action complained of is a voluntary dissolution, according to the methods provided by law. In these cases also, if it clearly appears that the action of the management is in bad faith, that the resolution for dissolution, for instance, has been superinduced by fraud or undue influence, or if it could be clearly established that this resolution was not taken for the

benefit of the corporation, or in furtherance of its interest, but for the mere purpose of unjustly oppressing the minority of the stockholders or any of them, and causing a destruction or sacrifice of their pecuniary interests or holdings, giving clear indication of a breach of trust, such action could well become the subject of judicial scrutiny and control. *Treadwell v. Copper Co.,* Appel. Div. Supreme Court N. Y., 613; *Elbogue et al. v. Gergereau Flyn Co.,* 62 N. Y. Supp., page 287; *In re London Mercantile and Dis. Co.,* 1 Eq. Cas. L. R. 1865-66, page 276; *In re Beaujolias Mill Co.,* 3 Chan. App. Cases, L. R. 67-68, page 13.

Such cases almost invariably arise when the management of a solvent concern, going and prosperous, ceases operations and determines to dissolve and sell out, with a view of continuing the same or similar business, under different control, and when there is indication given that the sole purpose was to oppress some of the stockholders and confiscate their holdings, or when it is done in furtherance of some scheme to promote the pecuniary interest of the actors and to the detriment of the corporation, giving indication of a breach of trust on the part of the authorities in charge and control of the corporate affairs.

But no such facts are presented here. There is no testimony offered of any scheme or conspiracy on the part of defendants to oppress the plaintiff, except an inference made by him from the fact that a dissolution was resolved upon. While the company is now solvent, it has not been running for several months, because the returns were not satisfactory, and the prospect of a change in this respect only rests in surmise. There is some dispute as to the amount of indebtedness; nor does there seem to be any capital ready and available, with which to resume operations in case such a course would be determined upon; and, from the allegations made by the parties, their attitude towards each other does not give promise of mutual co-operation or eventual success. On the evidence,

therefore, and in a case of this kind we are permitted to act on the evidence, the Court is of opinion that the restraining order was properly dissolved, and that, on the facts as they now appear, the contemplated dissolution should be allowed to proceed.

While we are of opinion that the order restraining the dissolution of the defendant corporation was properly dissolved, we do not think, even if our present disposition of the question should prevail at the final hearing, that the action should be dismissed. In such case, or before that time, if the directors and stockholders see proper, or deem it prudent, to act in advance of a trial, the dissolution should proceed under the methods provided by the statute. But there are, as stated, substantial issues arising in the pleadings, more particularly as to the indebtedness, both between plaintiff and defendants and between the individual defendants and the corporation, which will require decision by the Court. And, while by sec. 1201 of the statute, the directors, unless otherwise determined by order of some court having jurisdiction, are made trustees with power to settle or wind up the corporate business, under sec. 1203, this entire matter of winding up the business after dissolution may be taken charge of by the Court, and must be at the instance of either the creditors or stockholders, or any one of them. And matter clearly arising in this action being in part incident to the proper winding up and adjustment of the corporate affairs, and necessary to be determined, there seems to be no reason why, if dissolution is to be had, the proceedings referred to and contemplated in sec. 1203, should not be carried on and completed in this action, and this will include such orders as to the disposition and sale of the plant as may be for the best advantage of the assets and the best interest of the parties.

There is no error, and the judgment below is

Affirmed.