R. M. GAINES v. LONG MANUFACTURING COMPANY, INC., W. R. LONG, JOHN G. LONG, MARY ELLEN FORBES, INDIVIDUALLY, AND AS STOCK-HOLDERS AND DIRECTORS OF LONG MANUFACTURING COMPANY, INC., AND J. O. HALL, SECRETARY AND TREASURER OF LONG MANUFACTURING COMPANY, INC.

(Filed 31 October, 1951.)

**1. Pleadings § 19c—**

A demurrer tests the sufficiency of the complaint to state facts constituting a cause of action, admitting for the purpose the truth of every material fact properly alleged.

**2. Corporations § 8—**

The majority stockholders of a corporation exercise complete control, but such power imposes the correlative duty to protect the interests of minority stockholders, in relation to whom they occupy a position in the nature of a fiduciary.

**3. Corporations § 12—Allegations held sufficient to allege cause of action to restrain issuance of additional stock.**

Allegations of a minority stockholder to the effect that the corporation had a large surplus, including cash sufficient to pay an outstanding obligation of the corporation, that additional capitalization was not necessary, and that the majority stockholders had passed a resolution authorizing the issuance of additional stock to pay the outstanding obligation with pre-emptive rights to the then stockholders to purchase the additional stock proportionately, but that plaintiff was financially unable to exercise his pre-emptive right, that the issuance of such additional stock would greatly decrease the book value of his stock to his irreparable injury and that the majority stockholders were acting arbitrarily for the sole purpose of "freezing" plaintiff out of his just rights, *is held* sufficient to state a cause of action as against demurrer of the majority stockholders.

**4. Same—**

Where, in a minority stockholder's suit to restrain the corporation and the majority stockholders from issuing additional stock, the conflicting evidence raises a serious controversy as to whether additional capitalization was necessary or whether the issuance of the additional stock was authorized by defendants arbitrarily for the sole purpose of "freezing" plaintiff minority stockholder out of his lawful interest in the corporation, the temporary order is properly continued to the hearing.

**5. Injunctions § 8—**

Where, upon the return of a temporary restraining order, the conflicting evidence raises serious question as to whether plaintiff is entitled to the relief sought, the continuance of the order to the final hearing upon the merits is proper.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Bone, Resident Judge,* at Chambers in Nashville, 28 March, 1951, in action pending in the Superior Court of EDGECOMBE.

Civil action by minority stockholder of corporation for permanent injunction to prevent proposed issuance of additional capital stock. A temporary order of injunction was issued when the action was instituted. The defendants filed demurrer alleging that the complaint fails to state facts sufficient to constitute a cause of action. The cause was heard below on the demurrer and also on the question of continuing the temporary order of injunction until the final determination of the cause.

The court below entered two orders, one overruling the demurrer and the other continuing the temporary order of injunction until the final hearing. To the signing of each order the defendants excepted and appealed.

*Ruark & Ruark, Joseph C. Moore, Jr., and Battle, Winslow, Merrell & Taylor for plaintiff, appellee.*

*Henry C. Bourne for defendants, appellants.*

JOHNSON, J. This appeal challenges the action of the court below in (1) overruling the demurrer to the complaint, and (2) continuing the temporary order of injunction until the final hearing. The record seems to sustain both rulings.

1. *The demurrer.*—"The office of a demurrer is to determine the sufficiency of a pleading, admitting, for the purpose, the truth of the allegations of fact contained therein." *Brick Co. v. Gentry,* 191 N.C. 636, 132 S.E. 800. By demurring to the sufficiency of the complaint to state facts sufficient to constitute a cause of action, the defendants admit as true every material fact properly alleged. *Hall v. Dairies, ante,* 206, 67 S.E. 2d 63; *Bryant v. Ice Co.,* 233 N.C. 266, 63 S.E. 2d 547, and cases cited.

In substance, the facts alleged in the complaint are as follows:

1. That the defendant, Long Manufacturing Company, Inc., was chartered under the laws of North Carolina 13 September, 1946, with an authorized capital stock of 1,000 shares of $100 par value each. The corporation began business with an original paid-in capital of only $1,000, represented by 10 shares of stock. No further stock has ever been issued. The original ten shares are now outstanding. The plaintiff owns two shares, with the remaining eight shares being owned by these defendants, in the proportions as indicated: W. R. Long, six shares; John G. Long, one share; and Mary Ellen Forbes, one share.

2. The plaintiff paid full value for his two shares of stock and served as Secretary and Treasurer of the corporation from the time of its organization in 1946 until 30 June, 1949, when he resigned, and since that time he has not been an officer of the corporation.

3. The defendants W. R. Long, John G. Long, and Mary Ellen Forbes (who are brothers and sister) constitute the present board of directors of the corporation. They were elected at the 8 January, 1951, annual meeting of the stockholders. At the meeting of the board of directors held the same day, W. R. Long was elected President; John G. Long was elected Vice-President; and J. O. Hall (although being neither a director nor a stockholder) was elected Secretary and Treasurer of the corporation.

4. The corporation has prospered from its inception: for the fiscal year ending 31 October, 1947, the first year of operations, net profits after all taxes were $193,707.62; for the year ending 31 October, 1948, net profits after taxes amounted to $32,142.57; for the year ending 31 October, 1949, net profits after taxes were $19,317.43; and for the year ending 31 October, 1950, net profits after taxes were $50,367.05.

At the end of the fiscal year 31 October, 1950, the corporation had current assets of $352,130.24, including cash on hand in banks of $146,124.92. At that time the corporation had paid-in capital and earned surplus of $296,387.47 "and was amply solvent and was not in need of any additional operating capital"; that at the time of the commencement of this suit the financial condition of the corporation was substantially the same as on 31 October, 1950.

5. At the time of the stockholders meeting on 8 January, 1951, as well as "at the present time, the actual or book value of the stock of Long Manufacturing Company, Inc., was at least $29,638.74 per share; and the plaintiff's two shares of stock had an actual or book value of $59,277.48."

6. At the 8 January, 1951, annual meeting of the stockholders of the corporation a resolution "was introduced by the defendant John G. Long and carried by the votes of the defendants W. R. Long, John G. Long, and Mary Ellen Forbes over the protest of the plaintiff, who was present and voted his 2 shares of stock against" the resolution. The resolution recites in substance that the defendant corporation at its inception and during subsequent years was and has been short of working capital and that funds for capital investment and operations were advanced by W. R. Long, trading as Long Supply Company, and subsequently Long Supply Company, Inc., and that on 31 October, 1950, these advances to the defendant corporation amounted to $100,338.06. The resolution further recites that the remaining unissued authorized capital stock of the defendant corporation should be issued and sold for the purpose of paying off this indebtedness due Long Supply Company, Inc. And, thereupon, the resolution directs that the remaining 990 shares of unissued capital stock be issued and sold at not less than $100 per share, and that the indebtedness due the Long Supply Company, Inc., be paid out of the proceeds. The resolution further directs that each stockholder

of the defendant corporation shall be entitled to subscribe for 99 shares of the new stock for each share owned as of 8 January, 1951, and that each stockholder be allowed to subscribe and pay for the new stock at $100 per share. The resolution contains a forfeiture provision providing in effect that a failure on the part of any stockholder, his heirs or assigns, to exercise this pre-emptive right on or before 10 o'clock a.m. 10 February, 1951, shall work a forfeiture or waiver of the right to subscribe for such additional stock, with the directors being authorized to make sale of such remaining stock.

7. . . . "that the purported basis of the need for the issuance of additional capital stock as provided for by the foregoing resolution is twofold, first, purportedly to provide badly needed additional working capital as set forth in the minutes, and secondly, for the purpose of providing funds purportedly needed to retire an indebtedness to Long Supply Company, Inc., a corporation which is wholly owned, dominated and controlled by the defendants Long and Forbes. That there is no need for additional funds for either purpose, but that in truth and in fact the defendant corporation has ample funds for working capital and could at any time pay from its cash all of the indebtedness to Long Supply Company, Inc., and leave current assets of $251,792.18, which would be more than ample working capital for all of the operations of the Long Manufacturing Company, Inc. . . . that to put additional capital into Long Manufacturing Company, Inc., as aforesaid, would over-capitalize the Long Manufacturing Company, Inc., and it would have on hand considerable idle funds for a good part of the year which would be contrary to good business practice and would constitute a mismangement of the corporation."

8. . . . "that there is no valid reason for the adoption of a resolution such as was adopted by the defendants for the sale of additional capital stock of Long Manufacturing Company, Inc., but that in truth and in fact the adoption of said resolution was nothing but the culmination of an agreement on the part of the defendants Long and Forbes, in bad faith, and in breach of their trust as officers and directors of said corporation to render the stock of the plaintiff in said corporation practically valueless and so to deprive the plaintiff of the value of his said stock, . . . that the deliberate purpose of said resolution was to make it impossible for the plaintiff to continue his ownership in said corporation and to deprive him of the value of his said stock; and if defendants are permitted to continue and persist in their action as evidenced by the adoption of said resolution this plaintiff will be irreparably damaged and deprived of the value of his stock, and the book or actual value of plaintiff's stock will be reduced from approximately $60,000 to approximately $800.00, plaintiff not having sufficient funds with which to purchase the additional stock."

9. . . . "Plaintiff has exhausted all of his remedies within the corporation by attending the aforementioned Annual Stockholders Meeting of Long Manufacturing Company, Inc., and voting against the resolution above set forth and notwithstanding such action on the part of the plaintiff, the defendants are persisting in their wrongful action and purposes as aforesaid and plaintiff is without any remedy at law and will be irreparably damaged unless the defendants are restrained or enjoined."

Upon the allegations of the complaint, the plaintiff prays judgment that the defendants, individual and corporate, "be permanently restrained and enjoined from issuing the additional capital stock in Long Manufacturing Company, Inc., provided for in the resolution" . . .

Here, then, the demurrer has put to test the legal sufficiency of the complaint to state a cause of action. Thus is raised an issue of law, the answer to which requires application of the principles of law which control the facts as alleged.

The individual defendants are majority stockholders, officers and directors of the corporation. The plaintiff is a minority stockholder. The general duties which majority stockholders ordinarily owe minority stockholders in such circumstances are set out in broad outline in 13 Am. Jur., Corporations, sections 422 and 423, pp. 474, 475 and 476:

"The holders of the majority of the stock of a corporation have the power, by the election of directors and by the vote of their stock, to do everything that the corporation can do. Their power to . . . direct the action of the corporation places them in its shoes and constitutes them the actual, if not the technical, trustees for the holders of the minority of the stock. They draw to themselves and use all the powers of the corporation. . . .

"The devolution of unlimited power imposes on holders of the majority of the stock a correlative duty, the duty of a fiduciary or agent, to the holders of the minority of the stock, who can act only through them— the duty to exercise good faith, care, and diligence to make the property of the corporation produce the largest possible amount, to protect the interests of the holders of the minority of the stock, and to secure and pay over to them their just proportion of the income and of the proceeds of the corporate property. The controlling majority of the stockholders of a corporation, while not trustees in a technical sense, have a real duty to protect the interests of the minority in the management of the corporation, especially where they undertake to run the corporation without giving the minority a voice therein. This is so because the holders of a majority of the stock have a community of interest with the minority holders in the same property and because the latter can act and contract in relation to the corporate property only through the former. It is the fact of control of the common property held and exercised, and not the

particular means by which or manner in which the control is exercised, that creates the fiduciary obligation on the part of the majority stockholders in a corporation for the minority holders. Actual fraud or mismanagement, therefore, is not essential to the application of the rule.

"It is well established that courts of equity will entertain jurisdiction, at the instance of minority stockholders of a private corporation who are unable to obtain redress within the corporation and have no adequate remedy at law, to restrain threatened *ultra vires* acts on the part of the majority or to prevent any other act on the part of the majority which may be denominated as a breach of trust or a breach of the fiduciary duties owing to the minority."

In *White v. Kincaid,* 149 N.C. 415, 63 S.E. 109, with *Justice Hoke* speaking for the Court, this principle of *quasi*-trust relationship is recognized and discussed at length:

. . . "the directors of these corporate bodies are to be considered and dealt with as trustees in respect to their corporate management; and that this same principle has been applied to a majority or other controlling number of stockholders, in reference to the rights of the minority or any one of them, when they are as a body in the exercise of this control, in the management and direction of the corporate affairs, . . . if it could be clearly established that this resolution was not taken for the benefit of the corporation, or in furtherance of its interest, but for the mere purpose of unjustly oppressing the minority of the stockholders or any of them, and causing a destruction or sacrifice of their pecuniary interests or holdings, giving clear indication of a breach of trust, such action could well become the subject of judicial scrutiny and control."

In *Southern Pacific Co. v. Bogert,* 250 U.S. 483, 63 L. Ed. 1099, at p. 1106, *Justice Brandeis,* speaking for the Court, makes this observation in applying what has become popularly known as the majority stockholders rule:

"The rule of corporation law and of equity invoked is well settled and has been often applied. The majority has the right to control; but when it does so, it occupies a fiduciary relation toward the minority; as much so as the corporation itself or its officers and directors."

Testing the sufficiency of the allegations of the complaint by the foregoing rules of law, it would seem that the court below properly overruled the demurrer.

2. *The question of continuing the temporary order of injunction to the final hearing.*—As bearing on this question, each side offered voluminous evidence in the form of affidavits and exhibits tending to show the financial condition of the defendant corporation. It appears from the evidence that the defendant corporation is engaged in the manufacture and sale of farm equipment and machinery, principally oil burning tobacco

curers. All the evidence tends to show that the corporation has enjoyed a steady growth since its formation in 1946. However, the evidence is sharply in conflict as to the need and necessity for the issuance of the proposed stock in accordance with the plan outlined in the resolution adopted at the meeting of the stockholders on 8 January, 1951. The gist of the defendants' evidence is that the proposed plan to issue new stock should be carried out in order to provide funds with which to retire the indebtedness of $100,338.06 due to Long Supply Company, Inc., and to provide needed additional working capital to facilitate operations and carry out the corporation's planned expansion program.

The plaintiff's evidence, on the other hand, tends to show there is no need for additional working capital at the present time; that the corporation had on hand at the end of the last fiscal year (31 October, 1950) $146,000 in cash; that from this amount of cash the entire indebtedness due Long Supply Company, Inc., of $100,338.06 could be paid, leaving the corporation with cash of approximately $46,000 and with $206,000 of other current assets; that the current assets of the corporation would then amount to $252,000 as against current liabilities of $110,000, giving the corporation a ratio of current assets to current liabilities of 2.3 to 1, which the plaintiff contends is entirely adequate to take care of the present financial needs of the corporation and any reasonable expansion of its business.

The plaintiff offered further evidence tending to show that the present book value of each share of stock in the defendant corporation is $29,638.74, and since he owns two shares, the book value of his interest is $59,277.48; that he is financially unable to purchase the additional shares in accordance with his pre-emptive rights under the stock resolution adopted at the annual meeting on 8 January, 1951; that if the defendants are permitted to effectuate the issuance of the stock as provided in the resolution, the book value of each share of stock would be reduced to $395.38 per share, and the plaintiff's interest in the corporation would be diminished from $59,277.48 to $790.76, with the resultant loss to plaintiff of $58,486.72 inuring by absorption to the benefit of the defendants Long and Forbes, who own the rest of the stock and control the corporation.

It is established by well considered decisions of this Court that in actions of this character, the main purpose of which is to obtain a permanent injunction, if the evidence raises a serious question as to the existence of facts which make for the plaintiff's right, and sufficient to establish it, that a preliminary restraining order will be continued to the final hearing. *Springs v. Refining Co.,* 205 N.C. 444, 171 S.E. 635; *Proctor v. Fertilizer Works,* 183 N.C. 153, 110 S.E. 861; *Tise v. Whitaker-Harvey Co.,* 144 N.C. 507, 57 S.E. 210; *Hyatt v. DeHart,* 140 N.C. 270,

52 S.E. 781; *Harrington v. Rawls,* 131 N.C. 39, 42 S.E. 461; *Whitaker v. Hill,* 96 N.C. 2, 1 S.E. 639; *Marshall v. Commissioners,* 89 N.C. 103.

Upon this record it appears that the court below properly continued the temporary order of injunction until the final hearing.

For the reasons given, the orders overruling the demurrer and continuing the temporary injunction until the final determination of the case are

Affirmed.

VALENTINE, J., took no part in the consideration or decision of this case.