Brewster v. Powell Bail Bonding, Inc., 2018 NCBC 74.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
| NEW HANOVER COUNTY | 17 CVS 4462 |

RAUL S. BREWSTER,

     Plaintiff,

v.

POWELL BAIL BONDING, INC.;
LARRY JACK POWELL; JOHN E.
LEONARD, JR.; and CYNTHIA LEE,

     Defendants.

**ORDER AND OPINION ON DEFENDANTS' MOTION TO DISMISS**

1.    Plaintiff Raul S. Brewster is a minority shareholder of Defendant Powell Bail Bonding, Inc. ("PBB"), where he worked for nearly 20 years before being fired in 2015. In this action, Brewster contends that some of PBB's other shareholders carried out a wrongful scheme to push him out of PBB's day-to-day business and encumber his rights as a shareholder. Brewster asserts claims for breach of fiduciary duty, civil conspiracy, and unfair or deceptive trade practices. He also requests judicial dissolution of PBB.

2.    Defendants have jointly moved to dismiss Brewster's claim for judicial dissolution for failure to join necessary parties under Rule 12(b)(7) of the North Carolina Rules of Civil Procedure. Defendants have also moved to dismiss the remaining claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Having considered the parties' filings, the Court **GRANTS in part** and **DENIES in part** the motion.

*Kurt Thompson Law, by G. Kurt Thompson, Jr., and The Atlantic Coast Law Firm, by Mark J. Ihnat, for Plaintiff.*

*Shipman & Wright, L.L.P., by W. Cory Reiss, for Defendants.*

Conrad, Judge.

## I.
## BACKGROUND

3.     The Court does not make findings of fact in deciding motions filed under Rules 12(b)(6) or 12(b)(7).  The following factual summary is drawn from relevant allegations in the pleadings and the attached exhibits.

4.     PBB is in the business of bail bonding.  (Compl. ¶¶ 2, 18, ECF No. 3.) Brewster joined PBB in 1997 "as a recovery agent, finding and arresting defendants who skipped bail."  (Compl. ¶¶ 20, 28.)  He stayed in that role until 2005, when an internal dispute reshaped PBB's management and ownership and resulted in Defendant Larry Jack Powell taking charge of the company.  (*See* Compl. ¶¶ 22–23.) At that time, Powell offered Brewster an equity stake to keep him at PBB and to prevent him from defecting to a competing company.  (Compl. ¶ 32.)  Brewster accepted and became a director, a "2nd Vice President," and a 20% equity owner of PBB.  (Compl. ¶¶ 33, 35.)

5.     Around the same time, Powell brought aboard additional employees and shareholders. (Compl. ¶¶ 36–37.)  Powell's daughter, Defendant Cynthia Lee, joined PBB as an employee, Secretary, and 10% shareholder.  (Compl. ¶¶ 10–11, 36.) Defendant John Leonard, Jr. joined PBB as an employee, Vice President, and 10% shareholder.  (Compl. ¶¶ 15, 37.)  Lee's husband and Leonard's wife also received a 10% share each in PBB, though neither became an employee.  (Compl. ¶¶ 12–13, 16–

17.) In addition to taking on the duties of President, Powell retained a 20% stake in PBB, and his wife held the remaining 20% until her death. (Compl. ¶¶ 6–9.)

6.  Brewster alleges that, over the next decade, he took responsibility for all of PBB's "revenue generating operations." (Compl. ¶ 48.) Among other things, Brewster "supervise[d] the writing of bonds by all associate bondsmen"; developed all of PBB's "training programs"; set up PBB's new offices; and personally wrote and issued bonds. (Compl. ¶¶ 44–45.) Brewster also entered into an Agency Agreement with Accredited Surety & Casualty Company, Inc., which "imposed all liability for bonds written by Defendant PBB's bondsman upon" him and "provided for the assumption of liability for all bonds previously written by" Powell. (Compl. ¶¶ 38–40, Ex. A.)

7.  At some point, Brewster's work environment became "hostile." (Compl. ¶ 61.) Powell, Lee, and Leonard "systematically excluded" Brewster from PBB's financial matters: Brewster "was the only owner of Defendant PBB who was not named on [its] bank accounts"; he was "never allowed to approve" financial transactions; and he was denied access to accounting and banking records, excluded from management meetings, and barred from accessing PBB's safe. (Compl. ¶¶ 48–49, 56.) Brewster's demands to be included in these matters were ignored. (*See* Compl. ¶¶ 51, 54–55.)

8.  Tensions rose in September 2015. Brewster demanded to see PBB's By-Laws, but the Individual Defendants "intentionally withheld, modified, destroyed, or otherwise hid" them. (Compl. ¶¶ 58, 60.) Frustrated, Brewster wrote a letter voicing

his concerns and announcing his intent to divest himself of his shares of PBB. (Compl. ¶¶ 63–64.) Lee responded on behalf of the company, notifying Brewster that, effective immediately, he would be placed on paid leave. (Compl. ¶ 66, Ex. C.) Lee also expressed a desire "to find a long-term agreement" regarding Brewster's future employment and minority interest in PBB. (Compl. ¶ 66, Ex. C.)

9. Brewster alleges that, instead of negotiating an agreement, PBB fired him. (*See* Compl. ¶¶ 70–71.) PBB's attorneys demanded that Brewster "stay off . . . PBB's premises," "relinquish his bond powers," and "return all other property belonging to" PBB. (Compl. ¶¶ 67–68.) On September 25, 2015, PBB's attorneys e-mailed Brewster to inform him that his employment benefits were terminated, effective immediately. (Compl. ¶ 71.) Brewster alleges that he "never quit nor consented to the termination of his employment" or to any of the other measures taken by PBB. (Compl. ¶ 70.)

10. On October 7, 2015, less than two weeks after Brewster was fired, PBB called a special shareholders' meeting. (Compl. ¶ 72.) Only Powell, Lee, and Leonard and their spouses were present. (*See* Compl. Ex. D.) Brewster, through proxy, issued a written statement objecting to the meeting, asserting that he had not resigned, and demanding that he immediately be provided with all the compensation and benefits he was owed. (Compl. ¶ 72.) During the meeting, Powell, Lee, and Leonard were elected as the sole directors of PBB. (Compl. ¶ 73.) They immediately adopted new By-Laws and, a month later, approved a new Minority Shareholder Buy-Sell Agreement ("Shareholder Agreement"), both of which Brewster alleges were designed

to encumber his rights as a minority shareholder and to frustrate his reasonable expectations. (Compl. ¶¶ 73–77.)

11. According to Brewster, he is now in a difficult position. Though no longer working for PBB, he is still personally liable for approximately $32 million in bonds written by agents of PBB after his termination. (Compl. ¶ 85.) Yet by virtue of his exclusion as an owner and manager, he is prohibited from taking any action to mitigate his personal liability. (Compl. ¶¶ 93–95.)

12. Brewster initially filed suit in January 2016, asserting claims for judicial dissolution, breach of fiduciary duty, and civil conspiracy, along with requests for preliminary and permanent injunctive relief. On December 6, 2016, Brewster voluntarily dismissed all claims. Brewster filed this action on December 5, 2017, renewing each of the causes of action he had raised in the first suit and adding a claim for unfair or deceptive trade practices.

13. Defendants moved to dismiss Brewster's claim for judicial dissolution for failure to join necessary parties and to dismiss all other causes of action for failure to state a claim. The motion has been fully briefed, and the Court elects to resolve the motion without a hearing. *See* BCR 7.4.

## II.
## THE RULE 12(B)(7) MOTION

14. Brewster seeks an order judicially dissolving PBB under N.C. Gen. Stat. § 55-14-30. (*See* Compl. ¶ 112.) Defendants argue that "the shareholders in a corporation are necessary parties to an action seeking judicial dissolution" and that Brewster failed to join two of PBB's shareholders (Lee's husband and Leonard's wife)

as parties to this lawsuit. (Defs.' Mem. in Supp. of Mot. to Dismiss 3 ["Defs.' Op. Br."], ECF No. 15.) Defendants contend "the Court should either order the shareholders joined or dismiss the claim" under Rule 12(b)(7). (Defs.' Op. Br. 3.)

15. This issue is squarely governed by statute: "It is not necessary to make shareholders parties to a proceeding to dissolve a corporation *unless relief is sought against them individually*." N.C. Gen. Stat. § 55-14-31(b) (emphasis added); *see also Brady v. Van Vlaanderen*, 2017 NCBC LEXIS 61, at *34 (N.C. Super. Ct. July 19, 2017). Brewster has not asserted any claims against the absent shareholders, and he has not alleged any wrongdoing by them. Instead, Brewster alleges that they are "not employed or engaged in the management of" PBB and do not "exercise or benefit from the control or economic rights or benefits of their ownership independent of the respective spouses." (Compl. ¶¶ 12–13, 16–17.)

16. The absent shareholders are therefore not necessary parties. The Court denies the motion to dismiss the claim for judicial dissolution.

### III.
### THE RULE 12(B)(6) MOTION

17. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). "Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the

complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

18. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001).

## A. Breach of Fiduciary Duty & Civil Conspiracy

19. Brewster asserts his claim for breach of fiduciary duty against Powell, Lee, and Leonard. (*See* Compl. ¶¶ 113–17.) He alleges that these three Defendants, "as majority and controlling shareholders" of PBB, "owe fiduciary duties to Mr. Brewster as the minority shareholder." (Compl. ¶ 115.) He further alleges that Powell, Lee, and Leonard breached their fiduciary duties by "thwart[ing]" Brewster's reasonable expectations and misusing their control to benefit themselves to Brewster's detriment. (Compl. ¶ 115.)

20. Defendants contend that the complaint fails to state a claim because Powell, Lee, and Leonard did not own a majority of PBB's shares at the time of the alleged wrongdoing. (Defs.' Op. Br. 5–6.) As a result, Defendants contend, they did not owe any fiduciary duty to Brewster as a minority shareholder. (Defs.' Op. Br. 5.) In the alternative, Defendants argue that their alleged actions did not constitute a breach

of any duty and that Brewster did not suffer any cognizable injury. (Defs.' Op. Br. 7–8.)

21. To state a claim for breach of fiduciary duty, a plaintiff must allege that: "(1) defendant owed plaintiff a fiduciary duty; (2) defendant breached his fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to plaintiff." *Miller v. Burlington Chem. Co., LLC*, 2017 NCBC LEXIS 6, at *23 (N.C. Super. Ct. Jan. 27, 2017) (citing *Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 68, 628 S.E.2d 15, 20 (2006)). A fiduciary relationship exists when a person places special confidence in a party who "is bound to act in good faith and in the best interest of the" person reposing the confidence. *Lynn v. Fed. Nat'l Mortg. Ass'n*, 235 N.C. App. 77, 81, 760 S.E.2d 372, 375 (2014).

22. Corporate shareholders generally do not owe a fiduciary duty to one another. *See Freese v. Smith*, 110 N.C. App. 28, 37, 428 S.E.2d 841, 847 (1993). But there is an exception: a controlling shareholder owes a fiduciary duty to protect the interests of minority shareholders. *See Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344–45, 67 S.E.2d 350, 353–54 (1951). Typically, a controlling shareholder is a majority shareholder (or a group of shareholders with an aggregated majority interest acting in concert). *See id.* at 345, 67 S.E.2d at 354 (citing *S. Pac. Co. v. Bogert*, 250 U.S. 483, 487–88 (1919)); *Loy v. Lorm Corp.*, 52 N.C. App. 428, 432, 278 S.E.2d 897, 901 (1981). In a recent decision addressing an issue of first impression, the North Carolina Court of Appeals held "that a minority shareholder exercising actual control over a corporation may be deemed a 'controlling shareholder' with a concomitant fiduciary

duty to the other shareholders." *Corwin v. British Am. Tobacco PLC*, 796 S.E.2d 324, 330 (N.C. Ct. App. 2016), *review allowed, writ allowed*, 369 N.C. 751, 799 S.E.2d 616 (2017).

23.     It is at best doubtful whether the complaint adequately alleges that Powell, Lee, and Leonard are majority shareholders of PBB.  Each individual is a minority shareholder—Powell (20%), Lee (10%), and Leonard (10%)—and their aggregate interest (40%) does not amount to a majority.  (*See* Compl. ¶¶ 7, 11, 15.)  Brewster points to the fact that their spouses hold another 40%, but there are no allegations reasonably suggesting that Powell, Lee, and Leonard controlled their spouses' shares during the relevant timeframe.  (*See* Compl. ¶¶ 8–9, 12, 16; Defs.' Op. Br. 4–5.)

24.     Thus, the question is whether Brewster has "alleged facts from which it is reasonable to infer that a minority shareholder exercised actual control over the corporation's actions."  *Corwin*, 796 S.E.2d at 332.  To determine whether a shareholder exercised actual control, courts may evaluate many factors, including "the shareholder's percentage of voting shares, the relationship between the shareholder and the corporation, the shareholder's ability to appoint directors, and the shareholder's ability to affect the outcome of particular transactions."  *Id.* at 331. A conclusory allegation of control is insufficient to defeat a motion to dismiss.  *See id.* at 332.

25.     Construing the complaint liberally, the Court concludes that Brewster has adequately alleged actual control.  The complaint expressly alleges that Powell, Lee, and Leonard acted in concert for purposes of making PBB's financial and

management decisions.  (*See* Compl. ¶¶ 48–50, 55–56.)  Their combined 40% interest, although not a majority, is sufficiently large to permit an inference of control so long as the complaint includes other allegations tending to show the exercise of actual control.  *See Corwin,* 796 S.E.2d at 332; *see also Kahn v. Lynch Commc'n Sys.*, 638 A.2d 1110, 1114 (Del. 1994) (finding defendant with minority ownership of 43.3 percent exercised control over plaintiff's business affairs); *Williamson v. Cox Communs., Inc.*, 2006 Del. Ch. LEXIS 111, at *16 n.48 (Del. Ch. June 5, 2006) (citing cases).

26.    Here, the allegations do tend to show that Powell, Lee, and Leonard used their collective interest to control PBB.  In October 2015, Powell, Lee, and Leonard elected themselves as sole directors of the corporation at a special shareholders meeting.  (Compl. ¶¶ 70–73, Ex. D; *see also* Mem. in Opp'n to Mot. to Dismiss 6, ECF No. 16.)  As newly elected directors, they quickly adopted new Corporate By-Laws and a Shareholder Agreement, which Brewster alleges were designed to encumber his rights as a minority shareholder.  (Compl. ¶¶ 73, 75–77.)  Domination and control over the board of directors is often treated as a hallmark of minority control in analogous cases.  *See Corwin*, 796 S.E.2d at 332 (citing *In re Morton's Restaurant Grp., Inc.*, 74 A.3d 656, 664–65 (Del. Ch. 2013)); *see also White v. Kincaid*, 149 N.C. 415, 420, 63 S.E. 109, 111 (1908) (addressing fiduciary relationship when "controlling number of stockholders are exercising their authority in dictating the action of the directors").

27. The complaint is less clear concerning the extent of control exercised by Powell, Lee, and Leonard prior to their election as directors. Brewster does not identify, for example, the makeup of the board of directors before October 2015, nor does he explain the relationship between the board and Powell, Lee, and Leonard during that period. He does allege, though, that Powell, Lee, and Leonard were officers of PBB, controlled PBB's bank accounts, hired and fired permanent employees, held exclusive management meetings, and maintained exclusive access to various corporate and financial records. (Compl. ¶¶ 48, 56.) Standing alone, these allegations might not be sufficient to overcome the presumption that minority shareholders are not controlling shareholders. Paired with their later conduct as directors, though, the allegations of pervasive financial control support an inference that Powell, Lee, and Leonard exercised control over PBB even before October 2015. As our Supreme Court has explained, "[i]t is the fact of control" rather than "the particular means by which or manner in which the control is exercised" that matters. *Gaines*, 234 N.C. at 344–45, 67 S.E.2d at 353 (citation omitted).

28. Taken together, the complaint's allegations show that Powell, Lee, and Leonard acted in concert, jointly made all of PBB's key financial and management decisions to the exclusion of Brewster, named themselves as PBB's directors, and then rewrote the company's By-Laws and imposed a new Shareholder Agreement. At the pleading stage, these allegations are sufficient to give rise to an inference that Powell, Lee, and Leonard were acting as controlling shareholders and, therefore, owed a fiduciary duty to Brewster as a minority shareholder.

29. Defendants also argue that, even if a fiduciary relationship existed, Brewster has not alleged any breach of the fiduciary duty or any injury resulting from a breach. Specifically, Defendants focus on Brewster's loss of employment, contending that "the Complaint does not allege any facts demonstrating that a fiduciary duty owed to [Brewster] required that PBB retain him as a permanent employee." (Defs.' Op. Br. 7.)

30. This is too narrow a reading of the complaint. As Defendants' brief recognizes, lost employment is Brewster's "chief complaint" but not his only complaint. (Defs.' Op. Br. 7.) Brewster alleges more broadly that Defendants breached their fiduciary duties to him by marginalizing him within PBB (Compl. ¶¶ 48, 56, 60); limiting his ability to exercise his minority interest in PBB (Compl. ¶¶ 48, 60, 72–77); and devaluing his shares (Compl. ¶¶ 48, 81–83). Defendants ignore these allegations and provide no reasoned basis to conclude that they are insufficient to support Brewster's claim. Accordingly, read in a light most favorable to Brewster, the complaint sufficiently alleges a breach of the fiduciary duties owed by a controlling shareholder to a minority shareholder.

31. Finally, citing *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 405, 537 S.E.2d 248, 258–59 (2000), Defendants argue that Brewster cannot bring an individual claim for breach of fiduciary duty while also seeking judicial dissolution. (*See* Defs.' Op. Br. 5.) The Court finds no support in *Norman* for this assertion and notes that plaintiffs are generally permitted to plead alternative theories of recovery based on the same conduct or transaction. *See* N.C. R. Civ. P.

8(e)(2). Brewster's assertion of a claim for judicial dissolution therefore does not automatically require dismissal of his claim for breach of fiduciary duty.

32. For these reasons, the Court concludes that Brewster has adequately stated a claim for breach of fiduciary duty. The Court also concludes that Brewster has stated a claim for civil conspiracy. Defendants offer no independent basis to dismiss the conspiracy claim other than their arguments that the underlying claim for breach of fiduciary duty should be dismissed. Accordingly, the Court denies Defendants' motion to dismiss Brewster's claims for breach of fiduciary duty and civil conspiracy.

B. Unfair or Deceptive Trade Practices

33. Brewster's claim for unfair or deceptive trade practices is premised on the same alleged conduct underlying his claim for breach of fiduciary duty. (*See* Compl. ¶¶ 125, 127.) Defendants contend that the claim must be dismissed because the alleged conduct concerns only "the internal operations of PBB" and was therefore not in or affecting commerce. (Defs.' Op. Br. 9.)

34. By statute, "unfair or deceptive acts or practices in or affecting commerce" are "unlawful." N.C. Gen. Stat. § 75-1.1. As construed by our Supreme Court, this language is broad enough "to regulate a business's regular interactions with other market participants" but not so broad as to capture conduct "solely related to the internal operations" of a business. *White v. Thompson*, 364 N.C. 47, 51–52, 691 S.E.2d 676, 679 (2010). Thus, "any unfair or deceptive conduct contained solely within a single business is not covered by" section 75-1.1. *Id.* at 53, 691 S.E.2d at 680.

35.     This case is a classic shareholder dispute, having nothing to do with the type of unfair market conduct section 75-1.1 was designed to address. Brewster alleges that Defendants' wrongful acts include "obscuring company by-laws, dissipating corporate assets, unlawfully terminating [Brewster], and obstructing [Brewster] from access to his corporate assets and records." (Compl. ¶ 127.) Each and every alleged act, taken as true, is clearly internal to PBB, a single market participant. *See, e.g.*, *Wheeler v. Wheeler*, 2018 NCBC LEXIS 38, at \*14 (N.C. Super. Ct. Apr. 25, 2018) (granting motion to dismiss in "dispute between the shareholders of a corporation regarding its internal management and the shareholders' right to fair value for their ownership interest"); *Technik v. WinWholesale, Inc.*, 2012 NCBC LEXIS 5, at \*23 (N.C. Super. Ct. Jan. 13, 2012) (granting motion to dismiss in "case center[ing] on Plaintiff's termination as president of" corporation).

36.     Brewster's claim is part of a regrettable trend in North Carolina business litigation. There exists an impulse to turn every shareholder dispute or disagreement between members of a limited liability company into a section 75-1.1 claim. In a growing body of case law following *White*, our courts "have recognized [these] disputes for what they really are: intra-company feuds about internal operations." *Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at \*14 (N.C. Super. Ct. March 27, 2018); *see also Gao v. Sinova Specialties, Inc.*, 2018 NCBC LEXIS 71, at \*41–42 (N.C. Super. Ct. July 16, 2018); *Hampton v. Hanzel*, 2018 NCBC LEXIS 66, at \*61–64 (N.C. Super. Ct. June 29, 2018); *Wheeler*, 2018 NCBC LEXIS 38, at \*14; *JS Real Estate Invs. LLC v. Gee Real Estate, LLC*, 2017 NCBC LEXIS 104, at \*21 (N.C. Super. Ct. Nov. 9, 2017);

*Chisum v. Campagna*, 2017 NCBC LEXIS 102, at \*34–36 (N.C. Super. Ct. Nov. 7, 2017); *Bandy v. Gibson*, 2017 NCBC LEXIS 66, at \*21–22 (N.C. Super. Ct. July 26, 2017); *Worley v. Moore*, 2017 NCBC LEXIS 15, at \*75–76 (N.C. Super. Ct. Feb. 28, 2017); *Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at \*11–14 (N.C. Super. Ct. Feb. 8, 2017); *RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at \*46–50 (N.C. Super. Ct. June 20, 2016); *Coleman v. Coleman*, 2015 NCBC LEXIS 114, at \*20–22 (N.C. Super. Ct. Dec. 10, 2015); *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC LEXIS 30, at \*27–29 (N.C. Super. Ct. March 25, 2015); *McKee v. James*, 2014 NCBC LEXIS 74, at \*42 (N.C. Super. Ct. Dec. 31, 2014); *Vollrath v. Corinthian Ophthalmic, Inc.*, 2014 NCBC LEXIS 61, at \*14–15 (N.C. Super. Ct. Nov. 24, 2014); *Powell v. Dunn*, 2014 NCBC LEXIS 3, at \*10 (N.C. Super. Ct. Jan. 28, 2014); *Technik*, 2012 NCBC LEXIS 5, at \*23.

37.     By now, the message should be clear: section 75-1.1 plays no role in resolving these internal corporate disputes. Yet time and time again, section 75-1.1 appears where it does not belong, with consequences that are significant and unhealthy. The routine addition of section 75-1.1 claims in these cases invites avoidable motions practice—driving up the cost of litigation, taxing the resources of the Court, and exposing the plaintiff to a potential award of attorney fees under section 75-16.1. It also impedes settlement discussions by introducing remedies (including treble damages) that would otherwise be unavailable, thereby distorting the parties' incentives and their perceived risks. It is no surprise then that "[c]ourts strive to keep section 75-1.1 (along with its promise of extraordinary damages) within its

proper legal bounds." *Post v. Avita Drugs, LLC*, 2017 NCBC LEXIS 95, at \*9 (N.C. Super. Ct. Oct. 11, 2017).

38. Here, Brewster's allegations fall squarely within the rule stated in *White* and its progeny. The Court therefore grants Defendants' motion and dismisses the claim for unfair or deceptive trade practices with prejudice.

## C. <u>Remedial Claims</u>

39. The complaint purports to assert two causes of action for preliminary and permanent injunctive relief. (*See* Compl. ¶¶ 97–100, 101–04.) But injunctions are remedies, not independent causes of action. *See, e.g.*, *Revelle v. Chamblee*, 168 N.C. App. 227, 230, 606 S.E.2d 712, 714 (2005) ("A preliminary injunction is an ancillary remedy, not an independent cause of action."). Accordingly, for purposes of clarity, the Court grants Defendants' motion to the extent it seeks dismissal of the purported causes of action for preliminary and permanent injunctive relief. The Court renders this decision without prejudice to Brewster's ability to pursue whatever remedies he may be entitled to by law or equity pursuant to his prayer for relief, which the Court construes to include requests for injunctive relief. The Court will assess any motion for a preliminary or permanent injunction, if filed, on its own merits and not as part of this Order. *See LendingTree, LLC v. Intercontinental Capital Grp., Inc.*, 2017 NCBC LEXIS 54, at \*16–17 (N.C. Super. Ct. June 23, 2017).

## IV.
## CONCLUSION

40. For these reasons, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss as follows.

a. The Court **DENIES** the motion to dismiss Brewster's claims for judicial dissolution, breach of fiduciary duty, and civil conspiracy.

b. The Court **GRANTS** the motion to dismiss the claim for unfair or deceptive trade practices and **DISMISSES** that claim with prejudice.

c. The Court **GRANTS** the motion to dismiss the purported claims for preliminary and permanent injunctive relief but does so without prejudice to Brewster's right to pursue these remedies at an appropriate time.

This the 26th day of July, 2018.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases