Jon S. WILSON, Plaintiff,

v.

**WILSON–COOK MEDICAL, INC.; William A. Cook; Cook Group, Inc.; Robert K. Irie; and Dan G. Sterner, Defendants.**

No. C–89–138–WS.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Aug. 18, 1989.

James R. Hubbard and David C. Smith, for plaintiff.

M. Daniel McGinn and Ronald Wilder, for defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

In a seven-count Amended Complaint Plaintiff Jon S. Wilson ("Wilson") alleges constructive fraud, wrongful employment termination and failure to pay dividends against Defendants Wilson–Cook Medical, Inc. ("Wilson–Cook"), William A. Cook ("Cook"), Cook Group, Inc. ("Cook Group"), Robert K. Irie ("Irie") and Dan G. Sterner ("Sterner"). The Defendants have moved for dismissal on jurisdictional, venue and substantive grounds pursuant to Fed.R. Civ.P. 12(b), for misjoinder of claims pursuant to Fed.R.Civ.P. 20(a) and for failure to comply with the pleading requirements of Fed.R.Civ.P. 10(b).

For the reasons which follow, personal jurisdiction is found to exist with regard to all defendants. However, counts one, two, and that portion of three regarding the stock option purchase agreement will be transfered to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1406(a) because venue does not exist in this district. The remaining portion of count three and counts four, five, six and seven will be retained because the claims did "arise" in this district as that term is used in 28 U.S.C. § 1391(a). Count seven and that portion of count three that relates to the wrongful employment termination will be dismissed for failure to state a claim under the law of North Carolina.

## STATEMENT OF THE CASE

### A. *Parties*

William A. Cook, an Indiana citizen and resident, is the President and Chief Executive Officer of Cook Group, an Indiana corporation with its principal place of business in that state. Cook is a member of the Board of Directors of Wilson–Cook. Cook Group, a holding company with investments in health care companies throughout the world, owns 80% of the stock of Wilson–Cook, a North Carolina corporation with its principle place of business in North Carolina. Prior to relocating to North Carolina in 1984, Wilson–Cook had been a Canadian corporation established in Toronto, Canada in 1982. Wilson–Cook is engaged in the design, manufacture and distribution of medical equipment, primarily therapeutic endoscopy devices. Irie, a citizen and resident of Indiana, at all times material to this suit was a director of Wilson–Cook and an officer and director of Cook Group. Sterner, also a citizen and resident of Indiana, acted as legal counsel to Cook Group and to Cook individually, as well as serving as an officer of both Cook Group and Wilson–Cook.

Plaintiff Jon S. Wilson is a citizen of Canada and a resident of North Carolina. Wilson, who owns 10% of Wilson–Cook's stock, was the President of Wilson–Cook and served in that capacity until January 19, 1989, when he resigned, allegedly under duress. Donald Wilson, Plaintiff's father, owns the final 10% of Wilson–Cook's stock and, at least until January, 1989, served as the corporation's Vice–President. It is un-

clear from the record whether Donald Wilson also resigned his duties on January 19, 1989.

## B. *Shareholder Agreement*

The voting stock of Wilson–Cook is closely held, with Cook Group owning 80% of the corporation's stock and Jon and Donald Wilson each owning 10%. Plaintiff alleges Cook, Irie and Sterner, individually and as agents of Cook Group, "devised a scheme and plan to acquire Plaintiff's minority stock interest in Wilson–Cook at substantially less than fair market value." In essence, it is alleged that Defendants Cook Group, Cook, Irie and Sterner committed a constructive fraud against the Plaintiff in coercing him to sign a stock purchase agreement which, if enforced, allegedly would allow the Cook Group to buy the Plaintiff's stock at a fraction of its true value.

Defendants allegedly initiated the scheme in early 1984, by delivering both to Plaintiff and to Donald Wilson in North Carolina similar documents entitled "Stock Option—Purchase Agreement For Shares of the Capital Stock of Wilson–Cook Medical, Inc." ("Agreement"). Each agreement, drafted by Sterner at the direction of Cook and Irie, gave Cook Group the option to require the employee to sell Cook Group his shares of the capital stock of Wilson–Cook upon demand in the event of the employee's death, resignation or dismissal from Wilson–Cook. In the event Cook Group exercised that option, the purchase price for the stock would be the greater of book value or three times the average of the per-share after-tax net income of the company for the three years preceding the date of purchase. Finally, each Agreement contained an employment termination provision that gave Wilson–Cook the right to terminate that employee without cause. The Wilsons refused to sign the Agreements.

In early April, 1987, Irie and M. Phil Hathaway ("Hathaway"), officers of Cook Group, traveled to Winston–Salem from Cook Group headquarters in Bloomington, Indiana in a renewed attempt to persuade the Wilsons to sign the Agreements. Unsuccessful, Irie and Hathaway returned to Indiana. Irie then called the Plaintiff in Winston–Salem and advised him that Cook wanted to see him and his father in Indiana. On April 22, 1987, Cook sent a Cook Group company plane to Winston–Salem to transport the Wilsons to Cook Group headquarters.

Upon their arrival and in the presence of Sterner and others, Cook demanded that Plaintiff and Donald Wilson sign the Agreements, threatening to cause the Wilsons to be fired as officers of Wilson–Cook and to shut-down the company if they refused. Plaintiff and Donald Wilson each signed.

On January 19, 1989, Plaintiff resigned from his position as President of Wilson–Cook, allegedly under duress. Upon accepting the resignation, Sterner tendered to Plaintiff a "Notice of Exercise of Option." This document, executed by Irie on behalf of the company, exercised Cook Group's option, pursuant to the Agreement, to purchase Plaintiff's 10% interest in Wilson–Cook.

## C. *Wrongful Employment Termination*

At some time prior to the relocation of Wilson–Cook from Canada to North Carolina in 1984, Defendant Cook Group, through Cook, "assured Plaintiff that he would be employed as President of Wilson–Cook, absent malfeasance in office, as long as the company was considered reasonably profitable."

On January 19, 1989, during a time of at least reasonable profitability for Wilson–Cook, Irie, at that time Vice–President of Cook Group, and Sterner, Assistant Secretary and counsel to Cook Group, noticed and convened a meeting of the Board of Directors of Wilson–Cook at the Winston–Salem offices of the company's corporate counsel. At the meeting, Irie accused Plaintiff of taking unauthorized personal loans from Wilson–Cook and stated that Cook had ordered Plaintiff fired should he choose not to resign. Sterner then presented Plaintiff with a typewritten letter of resignation and requested that Plaintiff ex-

**536**

ecute it. Sterner threatened to call a shareholders meeting and take action that would result in the termination of the Plaintiff as President of Wilson–Cook if he did not sign the resignation. Plaintiff executed the resignation.

Upon execution of the resignation, Sterner tendered to Plaintiff (in addition to the Notice of Exercise of Option noted above) a document titled "Executive and Sales Employee Termination Agreement" ("Termination Agreement"). This document contained a covenant not to compete, an acknowledgement of termination of employment and a waiver of any claims that Plaintiff might have against Wilson–Cook arising from his termination. Sterner demanded that Plaintiff execute the Termination Agreement as a condition of the payment of the purchase price for the Plaintiff's stock. Plaintiff neither signed the Termination Agreement nor tendered his shares of Wilson–Cook stock.

### D. *Failure to Pay Dividends*

Wilson–Cook was established in 1982 as a Canadian corporation and in 1984 changed its incorporation to North Carolina in 1984, relocating to plant facilities in Winston–Salem. The company's 1988 sales were approximately $10,000,000 and its retained earnings at the close of that year were in excess of $3,500,000. No dividend has been authorized since the inception of the company, despite demand by Plaintiff.

### E. *Relevant Procedural History*

Plaintiff filed the instant action in this Court on February 23, 1989. Defendants filed their first motion to dismiss on April 3, 1989. Plaintiff filed an Amended Complaint along with its brief in opposition on May 5, 1989. The Amended Complaint contains seven counts. Count I seeks to rescind the stock purchase agreement and Plaintiff's January 19, 1989, resignation on the grounds of duress, economic coercion and undue influence. Count II also seeks recission, relying on N.C.Gen.Stat. § 55–35 and claiming that the use of duress and coercion violated the Defendants' fiduciary duties as officers, directors and majority shareholders of Wilson–Cook. Count III seeks recovery for wrongful employment termination, wrongful forced execution of the stock purchase agreement and failure to pay dividends under N.C.Gen.Stat. § 75–1.1 *et seq.*, North Carolina's Unfair Trade Practice Act.

Counts IV and V seek relief for failure to pay dividends, Count IV asserting rights under N.C.Gen.Stat. § 55–50 and Count V for breach of fiduciary duty under N.C. Gen.Stat. § 55–35. Count VI seeks dissolution of Wilson–Cook or alternative relief to allow Plaintiff to receive fair compensation for his Wilson–Cook stock as provided, under appropriate circumstances, by N.C.Gen. Stat. §§ 55–125(a)(4) and 55–125.1. Finally, Count VII alleges wrongful termination of employment.

Defendants have renewed their motions to dismiss, the Plaintiff has answered and the case now stands ready for ruling.

### DISCUSSION

### A. *Jurisdiction*

Plaintiff bears the burden of establishing jurisdiction as to each Defendant, *De Soto Trail, Inc. v. Covington Diesel, Inc.*, 77 N.C.App. 637, 335 S.E.2d 794, 796 (1985), and must show, in order for the Court to have personal jurisdiction in this diversity action, that each Defendant would be amenable to suit in a North Carolina state court. Fed.R.Civ.P. 4(e); *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987). The exercise of statutory jurisdiction must meet the test of constitutional due process, requiring the Defendant to have sufficient minimum contacts with the forum state to ensure the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Stated differently, a sufficient connection between the Defendant and the forum state must exist to make it fair to require defense of the action in the forum, in this case, North Carolina. *See Milliken v. Meyer*, 311 U.S. 457, 463–64, 61

S.Ct. 339, 342–43, 85 L.Ed. 278 (1940); *Kulko v. Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

When personal jurisdiction is based upon the long-arm statute, a two-step inquiry generally is applied: (1) whether asserting in personam jurisdiction over the particular defendant is contemplated by the statute, and (2) if so, whether asserting jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *See Blue Ridge Bank v. Veribanc*, 755 F.2d 371, 373 (4th Cir.1985); *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir.1982). Statutory jurisdiction in North Carolina arises under N.C.Gen.Stat. § 1–75.4 (1983), which provides, in pertinent part:

> A court of this State having jurisdiction of the subject matter has jurisdiction over a person ... under any of the following circumstances:
>
> .    .    .    .    .
>
> (8) Director or Officer of a Domestic Corporation. In any action against a defendant who is or was an officer or director of a domestic corporation where the action arises out of the defendant's conduct as such officer or director or out of the activities of such corporation while the defendant held office as a director or officer.

*See also* N.C.Gen.Stat. § 55–33(a) (1982 & Mitchie Supp.1988) (jurisdiction over nonresident director), and, among other special jurisdictional provisions, N.C.Gen.Stat. § 55–145 (1982 & Mitchie Supp.1988), which provides, in pertinent part:

> (a) Every foreign corporation shall be subject to suit in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:
>
> .    .    .    .    .

(4) Out of tortious conduct in this State, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

These statutes are to be construed liberally in favor of finding jurisdiction, *see De Soto*, 77 N.C.App. at 639, 335 S.E.2d at 796, and make available to North Carolina courts the full jurisdictional powers permissible under federal due process. *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1065 (4th Cir.1982), *citing Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629, 630 (1977); *J.M. Thompson Co. v. Doral Mfg. Co.*, 72 N.C. App. 419, 324 S.E.2d 909, *cert. denied* 313 N.C. 602, 330 S.E.2d 611 (1985). Thus, as long as the exercise of personal jurisdiction over these Defendants does not offend the Due Process Clause of the Fourteenth Amendment, personal jurisdiction over Cook Group may be exercised under N.C. Gen.Stat. § 55–145(a)(4), if Cook Group committed "tortious conduct" in this State, and personal jurisdiction over Cook and Sterner may be exercised as director and officer, respectively, of Wilson–Cook under N.C.Gen.Stat. § 1–75.4(8).[1] *J.M. Thompson Co.*, 324 S.E.2d at 913.

■ Before reaching the minimum contacts question, it must first be established that Cook Group committed a tort in North Carolina. Plaintiff's Amended Complaint alleges that Cook Group, through its agents Cook (as a director of Wilson–Cook, Cook being sole shareholder, President and Chief Executive Officer of Cook Group), Irie (as a director of Wilson–Cook, Irie being an officer and director of Cook Group) and Sterner (as an officer of Wilson–Cook, Sterner being an officer and legal counsel of Cook Group), attempted to force Plaintiff to sell to it his 10% interest in Wilson–Cook at a price substantially below its value, in violation of Cook Group's fiduciary duty as majority shareholder in Wilson–Cook to Plaintiff, a minority shareholder. [Amended Complaint, Count II, p. 9.] Ma-

---

**1.** Defendants Wilson–Cook and Irie do not contest the court's exercise of personal jurisdiction over them.

jority shareholders owe a fiduciary duty to the minority shareholders especially in the close corporation context, see *Umstead v. Durham Hosiery Mills, Inc.*, 578 F.Supp. 342 (M.D.N.C.1984), *citing Meiselman v. Meiselman*, 58 N.C.App. 758, 295 S.E.2d 249 (1982) *aff'd* 309 N.C. 279, 307 S.E.2d 551 (1983), and under North Carolina law, a breach of fiduciary duty raises a presumption of constructive fraud, a tort. *See Bumgarner v. Tomblin*, 92 N.C.App. 571, 375 S.E.2d 520, 523 (1989), *citing Miller v. First National Bank of Catawba County*, 234 N.C. 309, 67 S.E.2d 362 (1951). Therefore, if the actions that support the breach of fiduciary duty claim occurred in North Carolina, Cook Group has committed "tortious conduct" within the purview of N.C. Gen.Stat. § 55–145.

Plaintiff alleges that significant acts of Cook Group, through its agents, occurred in North Carolina in furtherance of its scheme to defraud him of the full value of his shareholder interest in Wilson–Cook: In 1984, at a meeting of the Board of Directors of Wilson–Cook in Winston–Salem, Cook, Irie and Sterner allegedly attempted to force Plaintiff to sign a Stock Option Purchase Agreement ("SOPA"), containing a compulsory sale provision which greatly undervalued Plaintiff's interest. A copy of the SOPA was delivered to Plaintiff, but he refused to sign. Three years later, in April, 1987, Cook Group officers Irie and Hathaway again attempted to obtain Plaintiff's execution of the SOPA in Winston–Salem. When Plaintiff again refused, Irie and Hathaway returned to Indiana; however, shortly thereafter, Irie called Plaintiff and told him that Cook wanted to talk with him regarding the SOPA. Cook Group then sent a plane to Winston–Salem to pick up Plaintiff, who, under alleged duress, signed the SOPA in Bloomington. Finally, in January, 1989, Irie and Sterner returned to Winston–Salem to terminate Plaintiff as President of Wilson–Cook, an event triggering the SOPA option. After obtaining the resignation, Irie and Sterner delivered to Plaintiff a "Notice of Exercise of Option", exercising its alleged right to purchase Plaintiff's interest at the purchase agreement price.

These allegations are adequate to allege "tortious conduct" within North Carolina on the part of Cook Group within the meaning of N.C.Gen.Stat. § 55–145.

■ Turning now to the constitutional due process prong of the Court's two step inquiry, the Supreme Court has, in a line of cases beginning with *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), formulated the due process standard which must be met in order to acquire in personam jurisdiction. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980); *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The test requires sufficient "minimum contacts" of the non-resident with the forum state such as to "not offend 'traditional notions' of fair play and substantial justice," *Woodson*, 444 U.S. at 291–92, 100 S.Ct. at 563–64, by providing a "sufficient connection between the [non-resident] defendant and the forum State to make it fair to require defense of the action in the forum," *Kulko*, 436 U.S. at 91, 98 S.Ct. at 1696. This burden has been held to be satisfied when there has been "some act [related to the cause of action alleged] by which the [non-resident] defendant purposefully avails [himself] of the privilege of conducting activities within the forum State ..." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239.

In the instant action, in personam jurisdiction over Cook Group, Cook and Sterner would not offend "traditional notions of fair play and substantial justice." As a director or officer of Wilson–Cook, a North Carolina corporation, both Cook and Sterner have "purposefully availed" themselves of the privilege of conducting activities within North Carolina. Moreover, the alleged breaches of fiduciary duty by these Defendants in their capacities as director and officer of Wilson–Cook, and by Cook

Group as majority shareholder, are a "sufficient connection" between these Defendants and the forum state such that it is fair to require defense of the action in a North Carolina court. *See Kulko*, 436 U.S. at 91, 98 S.Ct. at 1696; 2 Moore, *Federal Practice*, § 4.41–1[3], pp. 4–477–79 (1983) ("most courts have held that the commission of a single tortious act is a sufficient contact upon which to base the assertion of in personam jurisdiction"); *Columbia Briargate Co. v. First National Bank*, 713 F.2d 1052, 1060 (4th Cir.1983) *cert. denied sub nom. Pearson v. Columbia Briargate Co.*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984) ("If Corporation A from State X sends Employee B into State Y to [commit a tortious act], injuring Resident C in State Y, then jurisdiction over both A and B exists in State Y.")

B. *Venue*

Venue for this action is alleged to exist pursuant to 28 U.S.C. §§ 1391(a) and 1391(c). [Amended Complaint, para. 8, p. 2.] In relevant part, these sections provide:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

· · · · ·

■ From the statutory language it is clear that, under usual circumstances, a plaintiff may bring an action based on diversity in the judicial district where all plaintiffs reside, all defendants reside or where the claim arose, aided by the construction of residency provided by § 1391(c). However, an alien, such as this Plaintiff, is presumed by law for the purposes of establishing venue not to reside in any judicial district regardless of where the alien actually lives, *Galveston, Hamsburg*

*& San Antonio Ry. Co. v. Gonzales*, 151 U.S. 496, 506–07, 14 S.Ct. 401, 405, 38 L.Ed. 248 (1894); *Williams v. United States*, 704 F.2d 1222, 1225 (11th Cir.1983); *Fleifel v. Vessa*, 503 F.Supp. 129, 130 (W.D.Va.1980), and thus may bring an action only in the district where all Defendants reside or where the claim arose.

■ Because all Defendants do not reside in the Middle District of North Carolina, the burden is upon Plaintiff to show that each claim arose in this District. *See, e.g., Bartholomew v. Virginia Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816, *cert. denied* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 791 (1980) (plaintiff bears burden of establishing venue is proper); *Beattie v. United States*, 756 F.2d 91, 100 (D.C.1984) (where multiple causes of action are joined, venue must be proper as to each one); *Scotch Whiskey Ass'n v. Majestic Distilling Co.*, 681 F.Supp. 1297, 1301 (N.D.Ill. 1988) (same).

The leading case on determining where a claim arose for venue purposes is *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) (construing 28 U.S.C. § 1391(b)). *See generally*, 1A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, para. 0.342[5.–2–2] (2d ed. 1989). In that case involving the validity of the Idaho Corporate Takeover Act, the Supreme Court held, *inter alia,* that the determination of where a claim arose for the purposes of federal venue under § 1391 is governed by federal law. 443 U.S. at 183 n. 15, 99 S.Ct. at 2716. After resolving this preliminary issue, the Court stated:

The statute allows venue in "the judicial district ... in which the claim arose." Without deciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff [in § 1391(b) ] or to give that party an unfettered choice among a host of different districts.... In our view ... the broadest interpretation of the language of § 1391(b) that is even arguably accept-

able is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

443 U.S. at 184–85, 99 S.Ct. at 2717 (footnotes and citations omitted; emphasis in original). Although *Leroy* analyzes § 1391(b), not § 1391(a), this distinction makes no difference, especially where, as here, an alien has brought the suit and does not have a residence for the purpose of venue. *Hodson v. A.H. Robins Co.*, 528 F.Supp. 809 (E.D.Va.1981), *aff'd* 715 F.2d 142 (4th Cir.1983) ("[I]f the 'claim arose' language of § 1391(a) is to be given any meaning, and its venue gap filling purpose is to be achieved, it must be construed in a manner similar to the construction given the same language in § 1391(b) by the *Leroy* Court.") With this instructive language and keeping in mind first, that the purpose of the "claim arose" amendments to § 1391 was to close "venue gaps" that existed under previous versions of the statute, 443 U.S. at 185 n. 17, 99 S.Ct. at 2717 n. 17, and second, that the venue decision in general is "primarily a matter of convenience of litigants and witnesses," 443 U.S. at 186–87, 99 S.Ct. at 2718, it is this Court's task to determine whether a "locus" of each of Plaintiff's claims exists in this District such that venue for that claim is properly laid here.

The Court holds that venue for Plaintiff's claims relating to the Stock Option Purchase Plan (counts one, two and part of count three) does not properly lie in this district. The proper Defendants for these claims are Cook, Irie, Sterner and Cook Group, each a citizen and resident of Indiana. From this fact, the Court's assessment of events having operative significance in the claims and a common-sense appraisal of the implications of the Defendants' residency and those operative events for accessibility to witnesses and records, the Court can not hold that a venue "locus"

exists in North Carolina. *See Lamont v. Haig*, 590 F.2d 1124, 134 (D.C.Cir.1978).

In addition, these claims do not present a "venue gap" situation meant to be addressed by the "claim arose" amendments to § 1391.

"(C)laim arose" venue was designed to close the "venue gap" that existed in cases where all defendants did not reside in the same district ...

1A *Moore's Federal Practice*, para. 0.342[5.–2–2], p. 4167. By this observation the Court does not intimate that "claim arose" venue is only proper when a "venue gap" situation exists, 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d*, § 3806, p. 53 (2d Ed.1986) ("Wright, Miller and Cooper") *see also United States v. Lulac*, 793 F.2d 636, 645 (5th Cir.1986), but only notes that the existence of a "venue gap" circumstance is relevant to the determination of whether venue exists under the § 1391 "claim arose" amendments. Counts one, two and that part of count three alleging unfair trade practices as a result of alleged duress in the signing of the SOPA are transferred, on the Court's motion, to the United States District Court for the Southern District of Indiana, pursuant to 28 U.S.C. § 1406(a). This Court can not exercise "pendant venue jurisdiction" to hear these claims. *Bredberg v. Long*, 778 F.2d 1285, 1288 (8th Cir.1985); Wright, Miller and Cooper, § 3808 at 80.

■ Nevertheless, venue in this district does exist for the remaining portion of the Unfair Trade Practices claim (count three), and the failure to pay dividends (counts four through six) and wrongful termination (count seven) claims. Wilson–Cook, a North Carolina corporation, is a proper party defendant to these claims as alleged, along with Cook Group, Cook, Irie and Sterner. Therefore, all Defendants do not reside in the same district and the Court is presented with a "venue gap" situation which "claim arose" venue is designed to close.

These claims present "the unusual case in which it is not clear that the claim arose

in only one specific district." *Leroy,* 443 U.S. at 184–85, 99 S.Ct. at 2717. The existance of the North Carolina corporate defendant alters the implications for accessibility to witnesses and records, crucial to the venue decision. The relevant evidence regarding the non-payment of dividends of a North Carolina corporation is, using a common sense appraisal, most likely found in North Carolina. Moreover, the employment termination claim relates to the termination of employment of an officer of a North Carolina corporation for work performed in North Carolina. Again, common sense dictates that relevant evidence and witnesses will be found within this forum. Although specifically reserving the question of whether a claim can arise in more than one judicial district for venue purposes, the unfair trade practice, failure to pay dividends and wrongful employment termination counts have a venue locus in North Carolina.

Even though five Defendants are Indiana residents, inconvenience to these parties alone is not enough to alter the court's decision. These parties were either stockholders, directors or officers of a North Carolina corporation (or some combination thereof) and, as stated by Professor Moore:

> It may also be questioned whether the convenience of the defendant(s) should be of primary importance in determining where the claim arose. Since "claim arose" venue was designed to close the "venue gap" that existed in cases where all defendants did not reside in the same district, it was clearly contemplated that laying venue where the claim arose would result in some inconvenience to one or more defendants that would not have existed before the district where the claim arose became recognized as a proper venue.

1A *Moore's Federal Practice,* para. 0.342[5.–2–2] at p. 4167. Accordingly, the remaining part of count three and counts four through seven will not be dismissed for lack of venue.

## C. *Substantive Claims*

■ Having resolved the preliminary issues of jurisdiction and venue, the Court now turns to Defendants' substantive attack on Plaintiff's claims pursuant to Fed. R.Civ.P. 12(b)(6), failure to state a claim. The standard for determining this motion is well-settled: "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060 (4th Cir.1984).

In count seven of the Amended Complaint, Plaintiff alleges:

> 46. When Wilson–Cook was founded, Defendant Cook Group, as controlling shareholder of Wilson–Cook, through its President, William A. Cook, promised Plaintiff for adequate consideration that he would be employed as President of Wilson–Cook absent malfeasance, as long as Wilson–Cook earned a reasonable profit, and that Cook group (sic) would not exercise its controlling interest in Wilson–Cook to cause his termination.

This allegation fails to state a claim. The alleged contract of employment upon which the Plaintiff relies contains an insufficient allegation as to the duration of such employment. "Where a contract of employment does not fix a definite term, it is terminable at the will of either party, with or without cause, except in those instances in which the employee is protected from discharge by statute." *Smith v. Ford Motor Co.,* 289 N.C. 71, 80, 221 S.E.2d 282 (1976), *citing Still v. Lance,* 279 N.C. 254, 182 S.E.2d 403 (1971); *see also Tuttle v. Kernersville Lumber Co.,* 263 N.C. 216, 139 S.E.2d 249 (1964) (no definite term despite contention of employee that his employment was to be permanent as long as his work was satisfactory). There is no such statutory, nor judicially created, protection applicable to the Plaintiff in this case. *See, e.g.,* N.C.Gen.Stat. § 97–6.1 (1986) (statutory protection from retali-

atory discharge for asserting rights under North Carolina's Workman's Compensation Act); *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818 (1985) (judicially created protection from discharge for refusal to testify falsely or incompletely). Accordingly, count seven of the Amended Complaint is dismissed as to all Defendants.

■ The remaining portion of count three of the Amended Complaint, after a part was dismissed for lack of venue, alleges unfair and deceptive trade practices based on Plaintiff's allegedly forced resignation and Wilson–Cook's failure to pay dividends. That part of count three which alleges unfair trade practices because of Plaintiff's resignation must be dismissed both because Plaintiff has stated no claim with respect to his employment termination, *see Smith v. Ford Motor Co.*, 289 N.C. at 80, 221 S.E.2d 282, and because N.C.Gen.Stat. § 75.1–1, N.C.'s Unfair Trade and Deceptive Practices Act, does not apply to the employer-employee relationship. *Buie v. Daniel Int'l Corp.*, 56 N.C.App. 445, 289 S.E.2d 118, *disc. review denied* 305 N.C. 759, 292 S.E.2d 574 (1982).

■ Nevertheless, that part of count three which alleges unfair trade practices as a result of failure to pay dividends must be sustained. In *Hajmm Co. v. House of Raeford Farms, Inc.*, 94 N.C.App. 1, 379 S.E.2d 868 (1989), the plaintiff alleged that defendants owed him a fiduciary duty and breached that duty when they refused to redeem a revolving fund certificate issued to him in exchange for stock. Noting that the Plaintiff alleged, *inter alia*, that the refusal was unreasonable and that defendants manipulated the corporation's income to their benefit, the court stated plaintiff had sufficiently alleged a constructive fraud. The court found a constructive fraud allegation sufficient to allege a claim of unfair or deceptive trade practice. 379 S.E.2d at 876, *citing Spence v. Spaulding and Perkins, Ltd.*, 82 N.C.App. 665, 668, 347 S.E.2d 864, 866 (1986).

The facts of the current case are sufficiently analogous to *Hajmm* for that case to be controlling. Here, as in *Hajmm*, the Plaintiff has alleged bad faith and manipulation in violation of fiduciary duty by the Defendants. As such, Plaintiff has sufficiently alleged a constructive fraud in the failure to pay dividends and, therefore, a sufficient claim of unfair and deceptive trade practice. *Hajmm*, 379 S.E.2d at 876. All Defendants are properly named. *See Umstead*, 578 F.Supp. at 345 (corporate directors, officers and majority shareholders owe fiduciary duty to minority shareholders in North Carolina); *Loy v. Lorm Corp.*, 52 N.C.App. 428, 432, 278 S.E.2d 897 (1981), *citing Gaines v. Long Mfg. Co., Inc.*, 234 N.C. 340, 344–45, 67 S.E.2d 350, 353 (1951) (majority shareholders owe fiduciary duty to minority shareholders); N.C. Gen.Stat. § 55–35 (directors and officers owe fiduciary duty to all shareholders).

Plaintiff's remaining claims, counts four, five and six, for failure to pay dividends, failure to pay dividends in breach of fiduciary duty and for dissolution of Wilson–Cook such that Plaintiff may be paid reasonable compensation for his capital stock are also sustained. *See Meiselman v. Meiselman*, 309 N.C. 279, 307 S.E.2d 551 (1983); *Dowd v. Charlotte Pipe & Foundry Co.*, 263 N.C. 101, 104, 139 S.E.2d 10 (1964) (A stockholder in a corporation may sue the corporation, and join its directors as defendants, for failure to declare adequate dividends from the corporation's earnings, and may join therewith a second cause of action for liquidation and involuntary dissolution based upon bad faith management in suppressing dividends). Again, all Defendants are properly named. *Meiselman*, 309 N.C. at 302–03, 309 S.E.2d 551 (interpreting N.C.Gen.Stat. § 55–125); *Gaines v. Long Mfg. Co.*, 234 N.C. 331, 337–38, 67 S.E.2d 355 (1951) (N.C.Gen.Stat. § 55–50 allows suit for improper withholding of dividend payments against corporation, directors, majority shareholders and officers of the corporation); *see also Umstead*, 578 F.Supp. at 345 (general fiduciary duty of corporate directors, officers and majority shareholders to minority shareholders).

Defendants' contentions with respect to Fed.R.Civ.P. 20(a) and 10(b) are without merit. The Court notes, however, that its

disposition of the jurisdictional, venue and substantive dismissal motions have reduced the action in this Court to the facts and circumstances surrounding the failure to pay dividends. It appears this alleviates Defendants' Rule 20(a) concerns. Additionally, it is within the court's power to allow Plaintiff at any time to amend his Complaint, Fed.R.Civ.P. 15(a), and should the court decide that Plaintiff must amend his complaint to conform to Fed.R.Civ.P. 10(b), leave to amend for this purpose will be freely given.

An Order in accordance with this Memorandum Opinion will be filed contemporaneously herewith.