Flynn v. Pierce, 2020 NCBC 94.

STATE OF NORTH CAROLINA

PITT COUNTY

VIVIAN LEE FLYNN,

       Plaintiff,

v.

LONNIE T. PIERCE III; PATRICIA
PIERCE COMBS; and PIERCE
INSURANCE AGENCY, INC.,

       Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 1897

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS**

1. **THIS MATTER** is before the Court on Defendants' Motion to Dismiss (the "Motion"). (ECF No. 9.)

2. The case at hand involves a minority shareholder's claims against her brother and sister based on their management of the insurance agency founded by the three siblings' parents.

3. Plaintiff Vivian Lee Flynn ("Flynn") alleges that she is a 2% shareholder of Defendant Pierce Insurance Agency, Inc. (the "Agency") and claims that her brother, Defendant Lonnie T. Pierce III ("Pierce"), the Chief Executive Officer ("CEO") and 49% shareholder of the Agency, and her sister, Defendant Patricia Pierce Combs ("Combs"), the Chief Financial Officer ("CFO") and also a 49% shareholder of the Agency, have distributed the Agency's substantial profits through excessive salaries and bonuses to themselves (with no payment to Flynn) rather than through shareholder distributions (with resulting pro rata payments to Flynn). (Compl. ¶ 2, ECF No. 3.) Flynn has asserted claims against her siblings and the Agency for breach

of fiduciary duty, constructive fraud, judicial dissolution, constructive trust, and punitive damages. (Compl. ¶ 5.)

4. Having considered the Motion, the related briefing, and the arguments of counsel at the hearing on the Motion, the Court hereby **GRANTS in part** and **DENIES in part** the Motion.

*Ward and Smith, P.A., by Christopher S. Edwards and Gary J. Rickner, for Plaintiff Vivian Lee Flynn.*

*Poyner Spruill LLP, by Steven Epstein and John Michael Durnovich, for Defendants Lonnie T. Pierce III, Patricia Pierce Combs, and Pierce Insurance Agency, Inc.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

5. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"), reciting instead only those facts in the Complaint relevant to the Court's determination of the Motion.

6. The Agency was founded by Flynn, Pierce, and Combs's parents in 1955. (Compl. ¶ 19.) At least one of the siblings has worked for the Agency at any given time since 1976. (Compl ¶ 21.) Flynn worked at the Agency from 1976 through 1987, again from 2004 to 2008 as Head of Marketing and Sales, and since 2011 as Chief Marketing Officer. (Compl. ¶¶ 29–30, 43, 49.) While their exact titles and dates of service are unclear, it appears that Pierce and Combs have been involved in the executive management of the Agency at least since their father's death in 1992, (Compl. ¶¶ 2, 27), and have served in their respective roles as CEO and CFO at least

since 2008 (if not well before), (Compl. ¶ 114). The three siblings are the Agency's only officers. (Compl. ¶ 1.)

7. Flynn, Pierce, and Combs have owned shares in the Agency since its incorporation in 1975. Each began with 500 shares, and by 1994, through gift and inheritance, the siblings each owned 6,000 shares of Agency common stock. (Compl. ¶¶ 23–28.) In 1994, however, Flynn decided that she no longer had any interest in the Agency, (Compl. ¶¶ 32, 34–35), and sold all but five of her shares to the Agency at that time, (Compl. ¶¶ 35–38).

8. After Flynn's 1994 sale, Pierce and Combs owned 6,000 Agency shares each and Flynn owned 5 Agency shares, making the total number of Agency shares outstanding 12,005. Flynn thus owned 0.04% of the Agency's common stock as of 1994. (Compl. ¶¶ 38, 62.)

9. Flynn alleges that at least since 2012, she has owned 200 of the Agency's 10,000 outstanding shares (2% of the Agency's common stock) and that Pierce and Combs have each owned 4,900 shares (49% of the Agency's outstanding shares). (Compl. ¶¶ 7, 11, 14, 62.)

10. Flynn does not allege the specific transactions after 1994 through which either the number of the Agency's outstanding shares were reduced or through which her share ownership increased. Nevertheless, Flynn supports her allegation of 2% share ownership with numerous factual allegations concerning various Agency actions reflecting or acknowledging that she has owned 2% of the Agency's shares since at least 2012. (Compl. ¶¶ 55, 61, 64–68, 74–75, 94.)

11. Since 1994, the Agency has made two distributions to shareholders, the first in 2012 for $450,000 and the second in 2019 for $2,500,000. Flynn received 2% of each distribution. (Compl. ¶¶ 52–53, 56, 58–59.)

12. During this same time, however, Pierce and Combs caused the Agency to pay each of them substantial salaries and bonuses—compensation Flynn alleges was excessive relevant to market comparisons. Between 2013 and 2019, Pierce and Combs together received compensation of over $20,000,000. Flynn alleges that these payments exceeded the "accepted market rate for similarly situated officers" at similar companies in similar markets by more than $18,000,000. (Compl. ¶¶ 78–84.) Flynn claims that these compensation payments were "disguised or *de facto* distribution[s,]" (Compl. ¶ 86), that "should have been distributed to the Agency's shareholders on a pro rata basis[,]" (Compl. ¶ 85).

13. Flynn also alleges that Pierce and Combs have frequently excluded her from important discussions about the Agency's business and future plans even though she is an officer and the only other shareholder in the Agency. (Compl. ¶¶ 69, 112–16.) In particular, Flynn avers that Pierce and Combs (i) attempted to sell the Agency twice without Flynn's knowledge or consent, (Compl. ¶ 113); (ii) amended the Agency's bylaws without a formal shareholders meeting and through a corporate resolution reflecting Flynn's forged signature, (Compl. ¶ 114, Ex. E); and (iii) caused the Agency to rent a building from Pierce and Combs without Flynn's knowledge or consent, (Compl. ¶ 115).

14. Flynn filed this action on August 11, 2020, and Defendants moved to dismiss on September 17, 2020. After full briefing, the Court held a hearing on the Motion on November 19, 2020 (the "Hearing"), at which all parties were represented by counsel.

15. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

16. "When reviewing a complaint . . . under Rule 12(b)(6), [the Court] treat[s] . . . a plaintiff's factual allegations as true." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 442, 666 S.E.2d 107, 114 (2008) (quoting *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006)). However, "conclusions of law or unwarranted deductions of fact are not admitted." *Wray v. City of Greensboro*, 370 N.C. 41, 46, 802 S.E.2d 894, 898 (2017) (quoting *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448, 781 S.E.2d 1, 7 (2015)). The Court "consider[s] any exhibits attached to the complaint because '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.' " *Krawiec v. Manly*, 370 N.C. 602, 606, 811 S.E.2d 542, 546 (2018) (quoting N.C. R. Civ. P. 10(c)).

17. "The system of notice pleading affords a sufficiently liberal construction of complaints so that few fail to survive a motion to dismiss." *Wray*, 370 N.C. at 46, 802 S.E.2d at 898 (quoting *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481, 334 S.E.2d 751, 755 (1985)). "Dismissal of an action under Rule 12(b)(6) is appropriate when the

complaint 'fail[s] to state a claim upon which relief can be granted.'" *Arnesen*, 368 N.C. at 448, 781 S.E.2d at 7 (quoting N.C. R. Civ. P. 12(b)(6)); *see also Wray*, 370 N.C. at 46, 802 S.E.2d at 898 ("A complaint should not be dismissed under Rule 12(b)(6) . . . unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim." (citation and internal quotation marks omitted)).

18. The Supreme Court of North Carolina "[has] determined that a complaint fails in this manner when: '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Krawiec*, 370 N.C. at 606, 811 S.E.2d at 546 (quoting *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).

III.

ANALYSIS

A.    Determination of Flynn's Share Ownership

19. Although not argued in either their opening brief or reply, Defendants contended at the Hearing that all of Flynn's claims necessarily fail because her pleading establishes that she owns only 0.04% of the Agency's shares. As a result, Defendants argue that the sums Flynn acknowledges she has received in shareholder distributions far exceed what she was entitled to receive as a 0.04% shareholder and thus that Flynn has not suffered a legally cognizable injury, requiring dismissal of her claims.

20.     Defendants focus on Flynn's April 20, 2020 letter to Combs stating that she "sold her shares to 2% in the company in 1994," (Compl. Ex. B, at 1), and Combs's reply to Flynn that "you sold your shares in 1994 and were asked to keep 2% ownership in case a tiebreaker was ever needed," (Compl. Ex. C). Because Flynn stated in her letter that the 1994 transaction—the only specific share transaction she alleges in her Complaint—resulted in her 2% ownership stake when she admits in her Complaint that the 1994 transaction left her with only a 0.04% shareholder interest, Defendants argue that Flynn's pleading necessarily establishes that she owned only 0.04% of the Agency's shares as a matter of law.

21.     The Court disagrees. Flynn not only pleads that she owns 2% of the Agency's shares, but she also makes numerous factual allegations based on tax returns, draft sale documents, and the like that supply factual support for her averment of 2% ownership. (Compl. ¶¶ 7, 62, 64–65, 67–68, 74–75, Ex. A.) Despite Defendants' contentions to the contrary, Rule 12(b)(6) does not require Flynn to plead how she came to own 200 of a reduced outstanding share count of 10,000 shares rather than 5 of the 12,005 shares outstanding in 1994. It is enough to survive dismissal that she alleges the facts she has here. *See, e.g.*, *Marzec v. Nye*, 203 N.C. App. 88, 92, 690 S.E.2d 537, 540 (2010) (rejecting dismissal under Rule 12(b)(6) where "[t]he complaint specifically alleges that [the plaintiff] is a 25% shareholder of Nyeco"). The reasons for the representations in Flynn and Combs's unsworn letter exchange, as well as the Company's representations of Flynn's 2% ownership to state

and federal authorities and other parties, are matters appropriate for inquiry in discovery.

B.  Breach of Fiduciary Duties and Constructive Fraud

22.  Flynn alleges that Pierce and Combs breached their fiduciary duties as the Agency's controlling shareholders by causing the Agency to pay them excessive compensation rather than dividends to all shareholders.  (Compl. ¶¶ 117–30.) Defendants argue that Flynn's breach of fiduciary duty and constructive fraud claims based on this alleged conduct[1] must fail because (i) Pierce and Combs acted as board members, not as shareholders, in setting compensation and declaring dividends, (Defs.' Mem. Law Supp. Mot. Dismiss 11–12, ECF No. 10); (ii) Pierce and Combs are protected by the business judgment rule, (Defs.' Mem. Law Supp. Mot. Dismiss 12–14); and (iii) in any event, Pierce's and Combs's alleged conduct was not unlawful, (Defs.' Mem. Law Supp. Mot. Dismiss 14–19).  None of Defendants' arguments has merit under Rule 12(b)(6).

23.  "North Carolina courts ha[ve] recognized that individual minority shareholders of a closely-held corporation who act in concert and collectively own the

---

[1] "To establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff[,]" meaning that "to make out a claim for breach of a fiduciary duty, plaintiffs must first allege facts that, taken as true, demonstrate that a fiduciary relationship existed between the parties." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 339–40, 828 S.E.2d 467, 475 (2019). Constructive fraud "arises where a confidential or fiduciary relationship exists, which has led up to and surrounded the consummation of the transaction in which [the] defendant is alleged to have taken advantage of his position of trust to the hurt of [the] plaintiff." *Forbis v. Neal*, 361 N.C. 519, 528, 649 S.E.2d 382, 388 (2007) (citations and internal quotation marks omitted).  Flynn's claims for breach of fiduciary duty and constructive fraud are each predicated on Pierce's and Combs's alleged breach of fiduciary duties.

majority interest in the corporation may owe fiduciary duties as the controlling shareholders." *Zagaroli v. Neill*, 2018 NCBC LEXIS 25, at \*26 (N.C. Super. Ct. Mar. 28, 2018) (citing *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 407, 537 S.E.2d 248, 260 (2000)); *see also, e.g.*, *Maurer v. Maurer*, 2013 NCBC LEXIS 41, at \*10 (N.C. Super. Ct. Aug. 23, 2013) ("North Carolina appellate courts have recognized that a fiduciary duty is owed by a controlling shareholder to a minority shareholder in particular circumstances, and have allowed an individual claim for breach of that duty to proceed even if a derivative action would otherwise be appropriate.") This is so because majority and minority shareholders "have a community of interest . . . in the same property[.]" *Corwin v. British Am. Tobacco*, 371 N.C. 605, 616, 821 S.E.2d 729, 737 (2018).

24.     Significantly, North Carolina courts have further held that the fiduciary duty controlling majority shareholders owe to the minority "include[s] paying over to the minority shareholder his 'just proportion of the income and of the proceeds of the corporate property.'" *Johnston v. Johnston Props., Inc.*, 2018 NCBC LEXIS 119, at \*29 (N.C. Super. Ct. Nov. 15, 2018) (quoting *Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344, 67 S.E.2d 350, 353 (1951)). That proportionate income can be "in the form of a dividend[.]" *Id.*[2]

---

[2] Other courts have held to similar effect in circumstances like those here. *See, e.g.*, *Wilson v. Wilson-Cook Med., Inc.*, 720 F. Supp. 533, 542 (M.D.N.C. 1989) (permitting minority shareholder to sue the controlling shareholder and company under North Carolina law for "failure to pay dividends in breach of fiduciary duty"); *Jara v. Suprema Meats, Inc.*, 18 Cal. Rptr. 3d 187, 202 (Cal. Ct. App. 2004) (permitting minority shareholder to sue majority shareholders where they "deprived [plaintiff] of a fair share of the corporation's profits as a result of [their] generous payment of executive compensation to themselves").

25.     A minority shareholder may sue "a corporate officer where the shareholder alleges the corporate officer owed a 'special duty' to the shareholder plaintiff that is different than what is owed to the corporation itself." *Johnston*, 2018 NCBC LEXIS 119, at *30 (citing *Raymond James Capital Partners, L.P. v. Hayes*, 248 N.C. App. 574, 579–80, 789 S.E.2d 695, 701 (2016)).[3] Such "a special duty exists when a party violates its fiduciary duties to the shareholder." *Id.* (citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 659, 488 S.E.2d 215, 220 (1997)).

26.     Of particular relevance here, our courts have also "allowed a minority shareholder to pursue relief against . . . fellow shareholders who together held a majority interest, served as corporate 'directors and officers,' were 'firmly in control' of the corporation, and had common interests stemming from their related, jointly owned business." *Upchurch v. Sapp*, 2020 NCBC LEXIS 118, at *10 (N.C. Super. Ct. Oct. 8, 2020) (citing *Loy v. Lorm Corp.*, 52 N.C. App. 428, 431, 278 S.E.2d 897, 900 (1981)).

27.     Here, Flynn has alleged that Pierce and Combs (i) together own 98% of the Agency's shares; (ii) serve as the Agency's CEO and CFO, respectively; (iii) completely dominated and controlled the Agency's actions at all relevant times; and (iv) collaborated to breach their fiduciary duties to Flynn by paying themselves excessive compensation rather than making pro rata distributions of Agency profits to all shareholders. (Compl. ¶¶ 1, 10–11, 13–14, 69, 89–90, 112, 119–23.)

---

[3] Defendants' attempt to distinguish *Johnston* as a case involving a right to demand payment of dividends under N.C.G.S. § 55-6-40(i)–(j), (Defs.' Mem. Law Supp. Mot. Dismiss 16–17), is unavailing because the statute had no bearing on the court's decision in that case.

28. The Court concludes that these allegations are sufficient to give rise to a fiduciary duty that supports claims for breach of fiduciary duty and constructive fraud against Pierce and Combs. *See, e.g., Norman*, 140 N.C. App. at 407, 537 S.E.2d at 260 (permitting minority shareholder to pursue claims where plaintiffs alleged defendants were acting in concert, owned a majority of the corporation's stock, were corporate officers, and controlled the board of directors); *see also, e.g., Gaines*, 234 N.C. at 344, 67 S.E.2d at 353 (recognizing that controlling majority shareholders have a "duty to protect the interests of the minority in the management of the corporation, especially where they undertake to run the corporation without giving the minority a voice"). Defendants' Motion as to these claims must therefore be denied.

## C. Judicial Dissolution

29. Defendants also move to dismiss Flynn's statutory claim for judicial dissolution under N.C.G.S. § 55-14-30(2)(ii). To survive dismissal under Rule 12(b)(6), a minority shareholder must allege that:

> (1) he had one or more substantial reasonable expectations known or assumed by [the defendants]; (2) the expectation has been frustrated; (3) the frustration was without fault of [the plaintiff] and was in large part beyond his control; and (4) under all of the circumstances of the case, [the plaintiff] is entitled to some form of equitable relief.

*Gao v. Sinova Specialties, Inc.*, 2016 NCBC LEXIS 104, at *31 (N.C. Super. Ct. Dec. 21, 2016) (citation omitted). As a result, "[t]he trial court must (1) 'define the rights or interests the complaining shareholder has in the corporation,' and (2) whether dissolution is 'reasonably necessary for the protection of those rights or interests.' "

*Id.* (internal quotation marks omitted) (quoting *Meiselman v. Meiselman*, 309 N.C. 279, 301, 307 S.E.2d 551, 564 (1983)).

30. To support her statutory claim here, Flynn alleges that she has a right to receive and reasonably expects to be paid distributions,[4] that Pierce and Combs have denied her that right and frustrated that expectation, and that dissolution of the Agency is reasonably necessary to protect that right and that reasonable expectation. (Compl. ¶¶ 131–32, 134–37.) Defendants argue that because Flynn's stock ownership is insufficient to demand dividend payments under section 55-6-40(i)–(j), any expectation she had to receive dividends was unreasonable as a matter of law. Without such a reasonable expectation, Defendants contend that Flynn's dissolution claim necessarily fails. (Defs.' Mem. Law Supp. Mot. Dismiss 19–21.) Defendants also argue that Flynn, as a shareholder with, at most, 2% of the Agency's outstanding shares, cannot obtain the drastic remedy of judicial dissolution. (Defs.' Reply Br. Supp. Mot. Dismiss 11, ECF No. 19.)

31. Defendants' arguments are without merit. First, Defendants ignore that Flynn has a reasonable expectation on the pleaded facts for the Agency's profits to be paid to its shareholders pro rata. Even if her pro rata distribution is small—as would be the case if her share ownership is finally determined to be 0.04%[5]—Flynn still has a reasonable expectation that she will receive, pro rata, precisely what the other

---

[4] Flynn also alleges that she has a right and reasonable expectation to participate in the management of the Agency. (Compl. ¶ 133.) Defendants have not challenged this allegation as a basis for dismissal on the Motion. (*See* Def.'s Mem. Law Supp. Mot. Dismiss 19–21.)

[5] If her share ownership claim is established at 2%, it appears that her pro rata distribution could potentially be substantial.

shareholders receive, pro rata, as distributable profits of the Agency. *See Gao*, 2016 NCBC LEXIS 104, at *32–33 (holding that plaintiff had a reasonable expectation "that all distributions to shareholders would be made contemporaneously and based upon each shareholder's pro rata ownership interests").

32. Defendants' effort to impose a minimum share ownership requirement into section 55-14-30(2)(ii) fares no better. Not only does section 55-14-30(2)(ii) not contain such a limitation, but even where "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder[,]" *Johnston*, 2018 NCBC LEXIS 119, at *35 (quoting N.C.G.S. § 55-14-30(2)(ii)), "[a] court is not required to judicially dissolve a corporation, even if the shareholder establishes that judicial dissolution is proper pursuant to section 55-14-30(2)[,]" *Brady v. Van Vlaanderen*, 2017 NCBC LEXIS 61, at *19 (N.C. Super. Ct. July 19, 2017). To the contrary, in those circumstances N.C.G.S. § 55-14-31(d) expressly permits the corporation "to purchase the shares of the complaining shareholder at their fair value, as determined in accordance with such procedures as the court may provide." As a result, the statutory scheme ameliorates any unfairness that might otherwise follow should a de minimis shareholder have an unfettered right to dissolve the corporation.

33. Accordingly, based on the foregoing and its careful review of the Complaint, the Court concludes that Flynn has sufficiently pleaded her dissolution claim.

D.    Constructive Trust and Punitive Damages

34. Finally, Defendants argue that Flynn's purported claims for constructive trust and punitive damages must be dismissed because her underlying claims

necessarily fail and because, in any event, a constructive trust and punitive damages "are remedies, not stand-alone claims for relief." (Defs.' Mem. Law Supp. Mot. Dismiss 21–22.)

35. As explained above, Defendants' first contention has not survived the Court's scrutiny, but Defendants are correct that the imposition of a constructive trust and an award of punitive damages are remedies, not standalone claims. *See LLG-NRMH, LLC v. N. Riverfront Marina & Hotel, LLLP*, 2018 NCBC LEXIS 105, at *14 (N.C. Super. Ct. Oct. 9, 2018) ("[A] constructive trust is not a standalone claim for relief or cause of action."); *Beam v. Sunset Fin. Servs.*, 2019 NCBC LEXIS 56, at *29–30 (N.C. Super. Ct. Sept. 3, 2019) ("North Carolina courts have repeatedly held that 'a claim for punitive damages is not a stand-alone claim.' " (quoting *Funderburk v. JPMorgan Chase Bank, N.A.*, 241 N.C. App. 415, 425, 775 S.E.2d 1, 8 (2015))). Accordingly, the Court will grant Defendants' Motion to the extent it seeks dismissal of Flynn's purported claims for constructive trust and punitive damages but will do so without prejudice to Flynn's right to pursue these remedies on any surviving claims as warranted.

IV.

CONCLUSION

36. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

  a. The Court **GRANTS** the Motion as to Flynn's purported claims for constructive trust and punitive damages, and those purported claims

are **DISMISSED** without prejudice to Flynn's right to seek those remedies for any surviving claims that warrant such relief.

b.    The Motion is otherwise **DENIED**.[6]

**SO ORDERED**, this 22nd day of December, 2020.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge

---

[6] Flynn contends that the Court should not consider on the Motion certain documents Defendants attached to their supporting brief. (Mem. Opp'n Defs.' Mot. Dismiss 9–10, ECF No. 15.) The Court concludes, however, that it need not resolve this issue because consideration of those documents does not change the Court's conclusions as set forth above.